# ANTHONY SCORDO, ESQ., P.C.

69 East Allendale Road
Saddle River, New Jersey 07458
TEL: 973-837-1861
FAX: 973-837-9650

*E-MAIL: anthonyscordo@msn.com
ADMITTED TO PRACTICE IN N.J.

May 19, 2022

Honorable Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

  **Re: Barbara Ann Hartke v. Bonham & Butterfield's, The Catholic University of America**
  **Docket Number: 1:22-cv-03571**

Dear Judge Gardephe:

 Please accept this letter in lieu of a formal brief on behalf of plaintiff Barbara Ann Hartke in reply to Defendant Catholic University of America's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction with Temporary Restraining Order presently returnable May 19, 2022.

## Statement of Facts

 Plaintiff incorporates by reference the facts asserted in the Verified Complaint, Certification of Barbara A. Hartke, Certification of Katherine Anna Patnode, and the Certification of plaintiff's counsel attaching excerpts from the 363-page biography entitled <u>Father Hartke: His Life and Legacy in the American Theater</u> authored by Mary Jo Santo Pietro, Ph. D.  and published by Catholic University of America Press in 2002.

**Legal Argument**

I.  **The University has failed to present documentary evidence that decedent gifted the subject dress.**

Defendant concedes that the decedent died intestate in the District of Columbia. Therefore, in order to create a valid *inter vivos* gift, (as in New York), there must have been intent on the part of the donor to present a transfer, delivery of the gift, either actual delivery or constructive delivery to the donee, and acceptance by the donee. Ross v. Fierro, 659 A. 2d 234 (DC Ct. App. 1995). The proponent of a gift has the burden of proving each of these elements by clear and convincing evidence. Ibid. In order to prove donative intent, it must be shown from the evidence that the donor "*clearly and unmistakably* intended to permanently relinquish all interest in and control over the gift." Ross, supra.

The University has a long history, is a renowned institution with in-house counsel guiding ethical, conflict-of-interest free procedures regarding gift giving and receiving of all sorts of gifts. Yet, the University has presented absolutely no evidence in the form of affidavits, written declarations, receipts, in-take forms, a thank you note, acknowledgement by the University President, or confirmation of any sort as a gift of personal property, or any legally binding documents demonstrating the decedent offered the dress to the University, or that the University accepted the dress, while he was alive.

The University has presented absolutely no evidence (in the form of affidavits, written declarations, or legally binding documents) that the decedent gifted the dress to the University while he was alive. The University relies primarily upon hearsay in the form of old newspaper articles and the like, to attempt to demonstrate the decedent's donative intent, none of which are admissible and none of which show that he intended to permanently relinquish interest and control. See Roniger v. McCall, 119 F. Supp. 2d 407,410 (S.D.N.Y. 2000) (newspaper articles are inadmissible hearsay when used to prove the truth of the matter asserted). Plaintiff objects to Defendant's reliance on old newspaper articles to establish decedent's donative intent. Decedent was a public figure and was the subject many such articles as well as a very detailed well-researched biography by an author Mary Jo Santo Pietro, Ph.D. who knew him well decades before undertaking the book and, according to Dr. Santo Pietro therein, was present in the period when he was suffering from the illness(es) that resulted in his death. Plaintiff has little choice but

to rely on that biography to counter the University's skewed perspective presented by selectively presenting newspaper articles in its submission, but generally maintains that their reliance on same supports Plaintiff's position that a preliminary injunction must be maintained pending a plenary trial to resolve the issues in the Verified Complaint asserting replevin and conversion of Estate Property

    Furthermore, the biographer is living and is currently serving in an official capacity in the New Jersey state-wide Aphasia Task Force Commission. Thus, unlike the University's potential witnesses who authored articles decades ago, Dr. Santo Pietro can testify before this Court and was close friend and confidante of decedent.

    The University's submissions also include a document of the D.C. Probate Court entitled Petition for Probate stating that the *decedent died intestate*; thus (obviously) the University is incapable of producing a Last-Will and Testament and there cannot have been any bequest of the dress to the University. Plaintiff maintains that, in the absence of clear and unmistakable proof of decedent's *inter vivos* intent to give the dress to the University or a bequest, the University is without ownership and without the right to present the dress to Bonham's under its Concessionaire Agreement. The dress is the property of the Decedent's Estate by law since he died intestate. For this court to permit the auction to proceed it would be allowing the auction of property that the University never owned.

    The University also seems to be asserting that it and the Dominican House (College of the Immaculate Conception) are one and the same because when decedent resided there he was a faculty member at the University. Our Courts have recognized that simply because clergy are employed as faculty members at a University and have taken a vow of poverty with their order al obligating them to return part or all of their salary back to the University through their Order, they have not waived whatever rights they may have as employee against their employers (in that case to collectively bargain). <u>N.L.R.B. v. St. Francis College PA.</u>, 562 F. 2d 246 (3d Cir. 1977). Plaintiff maintains that <u>St. Francis</u> more generally establishes the proposition that the Order and the University are separate entities and, whether or not the vow of poverty is enforceable by the Order, such vow does not create any rights for the University to assert same. According to the biography, for his first 37 years, decedent never earned more than $5,700 annually at Catholic

and was not even made a full professor until his 38th year. The biography in a general sense shows quite a bit of friction between the decedent and the University. P.306.

The University also heavily relies upon the affidavit of the current Provincial of decedent's Order to assert that decedent intended to gift the subject dress to the University and the Provincial somehow now proclaims that it is University property based on his word alone. But there is no documentary evidence of the donation, the acceptance, the delivery as stated above would be and is university protocol to formally receive a gift. The Provincial of the Oder alludes to the Vow of Poverty taken by decedent when he was ordained, but Plaintiff fails to supply the Vow of Poverty contract of 1933 executed by decedent. It should be noted that the University presented some documents from a lawsuit involving Katherine Faith Prior (formerly a consultant to the national Endowment of the Arts and a member of the D.C. Commission of the Arts) as overseer of a project decedent institutes in which small busts of decedent (decedent referred to them "shrunken heads") would be presented to solicit donations to a Hartke Scholarship Fund maintained by a new non-profit corporation to be formed. The biography does refer to the litigation as follows:

> Unfortunately, the shrunken heads project ultimately resulted in a legal controversy that was to outlive Father by many years. It raised serious questions among Catholic University, the Dominican Order and devoted alumni as to who actually owned the legacy of Father Hartke. Everyone claimed exclusive rights to the Hartke name. Biography, pp. 356-357.

It should be noted that the University seems to now be claiming without any substantiation that any money it reasons from its bogus ownership claim will be used for scholarships. But the University presents no indication that it even still offers any such scholarships or honors decedent's legacy at all. In fact, an internet search cannot identify even a single Hartke Endowment Fund scholarship recipient. In drumming up press about the auction Father Hartke's name was barely mentioned.

II.     **Plaintiff has standing to maintain this action as an heir to the intestate estate**.

Simply put, plaintiff as a child of a brother of decedent who leaves no children, or their issue is a recognized heir to an intestate estate under Title 19 of the D.C. Code Descent Distribution Section 19-305. As an heir she clearly has standing to dispute claims of others to estate property.

The University has attached a document from the D.C. Probate Court that appointed Joseph P. Allen O.P. as personal representative for the decedent's estate in intestacy in 1986 in which it was asserted that decedent owned no tangible personal property. Allen's connection to the Decedent was simply as a representative of Decedent's so-called "creditor" the college of the Immaculate Conception, essentially the Dominican House.  Yet, there is no debt note, nor notice of debt owed, no contract between the Decedent and the creditor, no executed religious Vow of Poverty. Despite this, despite the property should have under D.C. Law passed to the heirs, Allen having undertaken the position would presumably have had the statutory obligation to inventory decedent's personal property under the current Title 20 of the current D.C. Code of Probate and Administration of Decedent's Estates, section 20-711 with the only exceptions being for food, ordinary wearing apparel, not either furs or jewelry, family pictures and family bibles (presuming that current provision is consistent).  According to his biography, Decedent was well-known for his extravagant taste in clothing and the size of his wardrobe. Allen's assertion that decedent had no personal property to inventory has to be questioned. Allen worked for the Order  and had actual bias for apparently arriving at a legal conclusion that everything in decedent's room was not owned by decedent. An unbiased representative would have left that determination to a court with jurisdiction.

The University appears to be now asserting that the dress was located somewhere on its premises when decedent died but the only evidence the University is able to muster is an affidavit of one Gail Stewart Beach who merely can state that she observed the dress on University grounds after 1987 (the date of death was February 8, 1986). Allen's non-existent inventory does not list the dress in decedent's possessions.  In summary, Plaintiff maintains Allen failed to inventory any of the property which failure constitute dereliction of his duty to take possession or control of the estate. See D.C. Code section 20-702, *The possibility or probability that the dress was in decedent's room when he passed remains unresolved given Allen's dereliction of his duties as personal representative.* Therefore, in the absence of proof of

possession the University has no evidence of either actual or constructive delivery of the dress, an indispensable element for a valid *inter vivos* gift under D.C. law.

While admittedly hearsay, according to his biography, the decedent needed two rooms at the Dominican House to store his memorabilia, collectable clothing, and expensive clothing. Biography, p. 344. One of those mementoes was the coat of Mike Todd an American Theatre and Film producer best known for his 1956 production of Around the World in 80 Days, which won the Academy Award for Best Picture, and who was the only husband Elizabeth Taylor did not divorce). As stated therein, the rooms were in utter chaos but included a stereo and all sorts of memorabilia much of what may have had significant value.  There were invitations to Presidential Balls dating back to the Truman administration, trophies, and the like. Decedent's unusual, expensive, apparel included a Russian fur hat (which under the D.C. Probate Code should have been listed). Ibid. Allen does not list the dress, a cultural artifact, as one of Decedent's personal possessions and based on his absent inventory, Allen failed to inventory any of the property in dereliction of his duty to take possession or control of Decedent's Estate. See, D.C. Code section 20-702, The possibility or probability that the dress was in Decedent's rooms at the Dominican's Residence when he passed remains unresolved given Allen's dereliction of his duties as personal representative.

Allen also claimed Allen notified the heirs. Unfortunately, Allen identified Plaintiff's relationship with the Decedent incorrectly, and purportedly sent the notification to Plaintiff's apartment building absent the apartment number. See Plaintiff's affidavit.  Similarly, Decedent's Grand-niece Katherine Anna Patnode (daughter of Plaintiff's sister Lillian Marie Hartke Lehman who was living at her mother's home) did not recall her mother receiving notice of the Decedent's Estate. See Affidavit of Katherine Anna Patnode.

With respect to the enforceable nature of the vow of poverty, the University's submissions are woefully deficient as to what exactly decedent's vow of poverty encompassed and whether gifts such as McCambridge's can be accepted. As noted, supra, the University has no standing to assert those vows which are the contractual right of the Order only. St. Francis, supra.  Generally, such vows are not consistent depending on the various Catholic Orders (nor even among different members of the Order) and certain clergy may keep gifts they receive. See, e.g. Estate of Callahan v. C.I.R., 33 T.C. 870 (1960). The University here has failed to present to

this court via any documentation, transcription or otherwise, what the decedent contractually agreed when he took the vows. See <u>Wisconsin Province of Society of Jesus v. Cassem,</u> 486 F. Supp. 3d 527 (D. Conn. 2020)  where the  District Court would not consider as evidence an exhibit that purported to be priest's religious vows, in a religious order's challenge to deceased priest's designation of beneficiaries of his retirement accounts, as the document was in Latin and order did not provide a certified English translation. Id., citing Fed. R. Evid. 901(a). Furthermore, if those vows were supposed to survive death would not it have made sense for the Order to require its priests to execute a Last Will and Testament devising all their belongings to the Order? More importantly, the Order has never claimed the dress as its own and is apparently waiving any claim now. The only rightful owner of the dress is the decedent's Estate. While plaintiff may not be the only heir to the Estate, she is the closest living relative to decedent. If other heirs wish to renounce their interest in the estate by transferring it to the University, that is their right but does not

## CONCLUSION

Based on the aforementioned facts and law, and those asserted in its original brief in support of temporary restraints, plaintiff asks this court to continue the temporary restraints imposed and preliminary enjoin defendants from transferring the property out of the jurisdiction and auctioning same until a plenary trial takes place to resolve the issues raised in the Verified Complaint.

Respectfully submitted,

s/Anthony Scordo
Anthony Scordo
Admitted pro hac vice