IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA ANN HARTKE, an individual on her own behalf and on behalf of the Estate of decedent Gilbert V. Hartke<br><br>*Plaintiff,*<br><br>v.<br><br>BONHAMS & BUTTERFIELD'S AUCTIONEERS CORPORATION, A DELAWARE CORPORATION; *THE* CATHOLIC UNIVERSITY OF AMERICA, A NON-PROFIT DISTRICT OF COLUMBIA CORPORATION<br><br>*Defendants.* | Civil Action No.: 1:22-cv-03571-PGG<br><br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' COMBINED MOTIONS TO DISMISS FIRST AMENDED VERIFIED COMPLAINT** |

## STATEMENT OF FACTS

Plaintiff Barbara Ann Hartke incorporates by reference the facts and allegations contained in the First Amended Complaint as if fully set forth herein. The following facts should be emphasized for purposes of this motion. The First Amended Complaint alleges that on or about June 13, 2022, plaintiff applied to the Superior Court, District of Columbia, Probate Division, to reopen the intestate Estate of Gilbert V. Hartke and to succeed the predecessor Allen as personal representative as a new asset of the (estate(sic)) had been discovered.

At the time the First Amended Complaint was filed, plaintiff was not the personal representative of the Estate of Gilbert V. Hartke and to date has yet to be appointed same. Furthermore, no inventory or marshalling of the (single) claimed asset of the Estate has been

compiled since the original probate proceeding was instituted in July 1986. Here, the appointed personal representative Joseph P. Allen listed no personal property of the decedent other than the right of the estate to publicize decedent's name as adjudicated in a court action. The Complaint alleges that at his death decedent owned substantial personal property, including but not limited toi the dress worn by Judy Garland in the Wizard of Oz which had been a personal gift to him from a close friend one Mercedes McCambridge. The Complaint alleges that Allen's statement made in the 1986 Probate proceeding that decedent owned no tangible personal property was false, fraudulent, or at the very least, made in reckless disregard of the truth. The Complaint does not name Allen, or his religious order, the College of the Immaculate Conception as defendants.

## LEGAL ARGUMENT

I. THE FIRST AMENDED COMPLAINT STATES CAUSES OF ACTION FOR CONVERSION, VIOLATION OF THE LANHAM ACT AND BREACH OF DUTY OF CARE AND THIS DISTRICT COURT THEREBY HAS SUBJECT MATTER JURISDICTION TO ADJUDICATE THE CLAIMS MADE.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the Complaint "to state a claim upon which relief may be granted." The pleading standard requires "a claim to relief that is plausible on its face" which requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). Twombly establishes two easy to clear hurdles namely that the Complaint describe the claim in sufficient detail to give the defendant fair notice of the claim and the basis for it and present allegations plausibly suggesting plaintiff has a right to relief. The Court must accept the truth of the pleadings well-pleaded allegations and draw all inferences in the light most favorable to plaintiff. Ibid.

### A. Plaintiff, both in her individual capacity and as applicant to reopen Estate and be appointed personal representative,  has standing to bring the claims asserted.
### B.

Defendants in their brief first assert that plaintiff's First Amended Complaint fails to allege a case or controversy under Article III whether brought in  her individual capacity, or on behalf of the Estate of Gilbert V. Hartke. They contend plaintiff's claims are either (1) premature since she is not yet representative of the Estate [1] or, (2) asking the Court to relitigate issues already decided in the DC Probate Action which took place in 1986 (p.7).    The Probate Code of the District of Columbia provides that:

> (if) property is discovered after an Estate has been closed and the personal representative has been terminated pursuant to Section 20-1301, the Court, upon petition of any interested person and upon such notice as it may direct, may appoint the same or a successor personal representative and make any other appropriate Order.  DC Probate Code, §20-1304.

While the Code does not define "interested person" as set forth in the statute, plaintiff as the closest living  heir of the decedent (at the level of niece) does constitute such an interested person.   In <u>Lessea Inc. v. Lessea Broadcasting Corporation</u>, 2021 WL 860939 (N.D. Ind. 2021) counterclaim plaintiff, as trustee of a Trust that had been assigned the right of one of decedent's son's (his name is Frank) beneficial share in the Estate,  counter-sued three not-for-profit companies controlled by other family members for, among other claims, converting assets of the estate, which constituted the lifetime  "works" of the decedent.  Counterclaim defendants argued that counterclaim plaintiff as simply an heir had no standing to bring those claims contending exclusive authority rested in  the personal representative of the Estate.  The Court found the heir had standing, ruling as follows:

---

[1] Strangely later in their brief, defendants assert that this Court may not exercise diversity jurisdiction because plaintiff is a citizen of DC as representative  of the Estate thereby not diverse from co-defendant Catholic University (P. 13).   Plaintiff as an undisputed heir of the Estate has standing to aset claims for assets discovered after the closure of the Estate.

3

> (W)hether by Indiana's laws of intestate succession or pursuant to the terms of the will belatedly produced, Frank is a one-third joint owner….For purposes of the present motion under Rule 12(b)(6), I assume the truth of the counterclaims factual allegations and draw all inferences in favor of the trust.  The facts alleged support a possible inference that (Frank) received co-ownership of the works and likeness at his father's death and he later conveyed them to the Trust.  So (counterclaims defendant's) argument that (the Trust) has no standing is without merit in as much as …. the plaintiff and (the Trust) has an obvious stake in the outcome of his suit.

Plaintiff in Lessea also raised, as do defendants here, the defense that the personal representative has exclusive authority  bring a claim seeking to recover property on behalf of an Estate.  [2] However, nothing in the DC Code as set forth, supra, proscribes an "interested person" from bringing such a claim independently when the Estate is not being administered by the Probate Court.  This position is supported by Lessea, supra applying Indiana law holding only where the Estate is currently being administered by the Probate Court must such a claim be brought by the personal representative. Otherwise, a sole or residuary heir has standing to sue if her claim accrues after the estate closed. Id.,  quoting Sandusky v. St. Jude's Research Hospital, 2012 WL 3779200 (S.D. Ind. 2012).

For additional persuasive authority applying  California law, see  Strasberg v. Odyssey Group Inc. , 59 Cal. App. 2d, 474 (Cal App 1998).   There the "after discovered" property in question were personal belongings of Marilyn Monroe alleged to have been concealed and converted by the executor during administration of the Estate and discovered after closure of the Estate. Monroe's beneficiary, Lee Strasberg (more accurately Strasberg's Estate since he passed away before Ms. Monroe's property was discovered), brought the action for conversion against the auction house (in possession via a consignment agreement) and enjoinment of  the auction.

---

[2] As noted, the DC Probate Code specifically permits interested persons to petition for reopening of the Estate.

The Strasberg court held that res judicata does not preclude a beneficiary from challenging a probate decree after the closure of an estate where (1) property is considered "after discovered property" or (2) the property was fraudulently concealed during the probate. Ibid.

Under the above cited authority, as intestate heir to the closed estate, plaintiff clearly has pled facts that, if proven, demonstrate an injury in fact resulting from conversion of the dress which is undisputed valuable property to its owner. And pursuant to the above cited authority, the closure of the estate does not prevent her from pursuing such claim under the doctrine of res judicata. Thus, defendants Motion to Dismiss for standing via Article III or otherwise must be denied.

### B. The Probate Exception to federal jurisdiction is inapplicable here.

Federal jurisdiction cannot be exercised to probate a Will or administer a probate estate. Markham v. Allen, 66 S. Ct. (1996).    Under this so-called probate exception, for example, typical claims for breach of fiduciary duty or torts committed by an executor or administrator fell outside the scope of federal jurisdiction. However, the probate exception is narrow and should not be used as an excuse for the Court to deny jurisdiction merely because the claims involve a probate related matter.  Marshall v. Marshall, 126 S. Ct. 1735 (2006). The exception does not bar Federal Courts from addressing matters outside the exemption.  Here no claims have been made against the personal representative Allen who is not a party to this suit nor is his religious order.

Generally, where property is already in the custody of a State Probate Court, or assets are being administered to, the federal Court should not exercise jurisdiction.  Lefkowitz v. Bank of NY, 528 F.3d 102 (2d. Cir 2007).  However, if there was never a State Court proceeding over the property in question the exception is inapplicable.  Lessea Inc., supra citing Wolfrom v. Wolfrom, 78 F. Supp 3d 758 (N.D. Ill. 2015).  "Where a federal claim's success would just add

<u>assets to the decedent's estate and would not reallocate the estate's assets among contending claimants or interfere with the Probate Court's control over and administration of the estate the claim is not within the probate exception to federal jurisdiction…..</u>" (emphasis supplied), Lessea Inc., supra, quoting Gustafson v. zumBrunnen, 546 F.3d 398 (7th Cir 2008).

Here, plaintiffs claim merely seeks to add a valuable asset to the decedent's estate and not adjudicate how said asset be distributed which would have to be approved by the DC Probate court.  The probate exemption is clearly inapplicable and defendants' motion to dismiss on such ground for lack of subject matter jurisdiction must be denied.

    **C.  Diversity of Citizenship exists to adjudicate the state law claims here.**

Plaintiff is a citizen of Wisconsin.  Defendant Catholic University of America is a citizen of DC and co-defendant Bonham's is alleged to be a citizen of the State of Delaware where it was incorporated and, or in the State of New York where it conducts business.

It is <u>black letter law</u> that the conditions that create diversity jurisdiction need not survive through the life of the litigation.  Rather a Court determines the existence of diversity jurisdiction of the time the action is filed regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy.  <u>Freeport McMaran v. KN Energy, Inc.</u>, 111 S. Ct. 858 (1991); see also generally 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure,</u> sec. 3608 (2d Ed. and supp. 2014).

Defendants' arguments as to her status as applicant to be appointed as personal representative are directly contradictory. They first assert in the first point that plaintiff lacks standing for not being personal representative but here argue that her pending appointment as personal representative will divest the court of subject matter jurisdiction.  Neither assertion is

6

correct. Their Motion to Dismiss that aspect of the state law claim alleges consent for lack of dismissal of citizenship must be denied.

### D. Plaintiff's allegations in the Complaint establish a claim against defendants under the Lanham Act for false advertising.

With respect to plaintiff's Lanham Act false advertisement claim, the Lanham Act provides

> (1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description or fact, or false or misleading representation of fact, which-
> […]
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1)(B).

False or misleading representations concerning ownership of a good or service made in the course of commercial advertising or promotion constitute a violation of section 43(a)(1)(B) of the Lanham Act. Didigan v. Ivalidate Inc., 2004 WL 20301 (S.D.N.Y. 2004) (dismissing Lanham Act claim against a claimed owner of a patent because a patent was neither a good nor service.) Where plaintiff can allege facts that show a challenged advertisement is literally false, i.e. false on its face, it has stated a cause of action under the Act. Time Warner Cable Inc. v. Direct TV Inc., 497 F. 3d 144 (2d Cir. 2007).

The statement alleged to be false here is that quoting Bonham's website (para. 7 of First Amended Complaint) claiming they have "provenance" of the subject dress.

"Provenance" is defined in the Oxford University English Dictionary as "a record of ownership of a work of art or an antiquity as guide to authenticity or quality." Here the word provenance in the advertisement for the auction (enjoined by the court) is false as it implies to the public that principal Catholic is the owner of the dress and that Bonham's as its agent has the right to sell it. Both are liable under the Lanham Act and at common law (see infra). See e.g. Deere Inc. v. Miller Godley Auction House, 249 Ga. App. 797 (2001).

### D. The dress cannot be deemed to be abandoned by decedent, its true owner, and the claim for conversion cannot have accrued until Catholic University wrongfully claimed ownership.

Conversion involves the unauthorized assumption and exercise of the right of ownership over personal property belonging to another in denial or repudiation of the owner's rights. Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it is a conversion. Duggar v. Keto, 554 A.2d 1126 (D. D.C. 1989); Yung v. Institutional Trading Co., 693 F. Supp. 2d 70 (D.D.C. 2010). It is unnecessary to show that the defendant applied the properly to his own use if he exercised dominion over it in disregard of the owner's right or in a manner inconsistent with it. Ibid. See also Deere and Co. v. Miller-Godley Auction Co, 249 Ga. App. 797 (Ct. App. 2001).

Defendants contend that the claim for common law conversion cannot lie for items lose or left behind. (p. 22 of brief). This is yet another misstatement of black letter law. The common law generally categorizes found property in four ways. Found property can be *mislaid*, lost,

abandoned or treasure trove.  Am Jur 2d, <u>Abandoned, Lost and Unclaimed Property</u> § 12 (2012) cited in <u>Grande v. Jennings</u>, 229 Ariz. 584 (Ct. App. 2012).  Property is mislaid if the owner intentionally places it in a certain place and later forgets about it.  This differs from abandoned property which must be thrown away or be voluntarily forsaken by its owner.  Ibid. A finder of mislaid property must turn the property over to the premises owner who has the duty to safeguard the property for the true owner.   While the right of possession of mislaid property generally belongs to the owner of the premises upon which the property is found, such processionary right only prevails over all persons other than the true owner.  Ibid.

    The dress in question here was not abandoned but was clearly mislaid.  From the time it was gifted to decedent by Mercedes McCambridge it was always considered a valuable property and the movie The Wizard of Oz was already part of American lore and, perhaps, the most beloved and watched film in the history of cinema. (First Amended Complaint, para. 13).   At all times it is clear that the dress had value and was never to be thrown away.  The fact that it was found on defendant's premises does not make it abandoned as asserted by defendants.  The claims of the true owner Hartke and his estate prevail over the claims of defendant Catholic University which simply was the owner of the premises where the "after-discovered" dress was found. Catholic's claims as finder do not prevail over the true owner.

    Defendants do not even dispute that decedent was the rightful owner of the dress and have apparently abandoned the position that they have any evidence that decedent ever made an inter vivos gift. The essential elements of such a gift are donative intent, delivery and acceptance. <u>Ross v. Fierro,</u> 659 A. 2d 234 (DC Ct. App. 1995). In order to support donative intent it must be shown from evidence that the donor clearly and unmistakably intended to permanently relinquish all interest and control over the gift. Ibid. Such evidence is clearly lacking so the fact that the

dress was found on Catholic's premises in no way could demonstrates ownership as Catholic claims.

The statute of limitations in the District of Columbia for common law claims is three years from accrual.  D.C. Code 12-301(8).  A claim for conversion accrues when the plaintiff has either advanced notice of her cause of action or is claimed to be on constructive notice by failing to act reasonably under the circumstances in investigating  matters affect where such an investigation would have led to actual notice.  Krukas v. AARP Inc., 376 F. Supp. 3d 1 (D. D.C.  2019).  Here plaintiff only became aware of the defendants' exercise of dominion over estate property when she learned through Bonham's advertisement of a pending auction to take place on May 24, 2022. (Complaint, para 7). This publication demonstrating exercise of dominion and ownership was well within the three year statute of limitations which does not bar the state law claim. As for Bonham's, under common law, a paid auctioneer of property acts as agent for the principal (here Catholic University) and liability for conversion is imposed on the auctioneer just as if they were the principal.  See Deere Inc. supra.

Thus, the facts as asserted in the First Amended Complaint sustain a claim for common law conversion not time barred. Defendant motion to dismiss the conversion claim must be denied.

> **E. Defendant Catholic University  Violated its Duty of Care to Follow its Own Ethical Guidelines Enacted for the benefit of the public as potential donors .**

Here plaintiff does not allege as asserted by defendant Catholic that she has contractual rights as a third party beneficiary to bring a cause of action against Catholic for the violation of its own Guidelines for Acceptance, Management and Disposition of Gifts . Cf.  Washington University v. Catalona, 437 F. Supp. 2d 985 (ED Mo. 2006) (patients who donated tissues to

University for medical research claim that the University failed to comply with governmental standards as contractually agreed to). Rather plaintiff asserts that there are circumstances such as here where violation of those rules affects third parties harmed by such violation. Tedeschi v. Wagner College, 404 NE 2d. 1320 (NY Ct. App. 1980). Plaintiff alleges that Catholic's decision to place the dress up for auction was made recklessly in clear and obvious violation of said policies. These policies were specifically designed to provide guidance and information to the public as prospective donors and are not meant to be confined to internal use. The Amended Complaint states that the University's actions in putting the dress up for auction violated those policies and harmed plaintiff, one of those for whom the Guidelines were meant to protect. Plaintiff maintains that as a foreseeable plaintiff she may maintain a cause of action against the University when its violation of its own policies results in anticipated harm. See Wagner, supra.

## CONCLUSION

Based on the aforesaid facts and law, plaintiff Barbara Ann Hartke, both in her individual capacity and on behalf of the Estate of her uncle Gilbert V. Hartke, maintains that this court must deny defendants' combined motions to dismiss.

Respectfully submitted,

s/ Anthony Scordo

Dated: August 19, 2022

_____
Anthony Scordo
Attorney for Plaintiff Barbara Ann Hartke,
Individually and on behalf of the Estate of Gilbert
V. Hartke, deceased