UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA ANN HARTKE, an individual on her own behalf and on behalf of the Estate of decedent Gilbert V. Hartke,

                Plaintiff,

- against -

BONHAMS & BUTTERFIELDS AUCTIONEERS CORPORATION and THE CATHOLIC UNIVERSITY OF AMERICA,

                Defendants.

**MEMORANDUM**
**OPINION & ORDER**

22 Civ. 3571 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

         In this action, Plaintiff Barbara Hartke – in her individual capacity and on behalf of the estate of Gilbert V. Hartke (the "Estate") – asserts rights to a dress worn by Judy Garland in The Wizard of Oz.  Defendants are the Catholic University of America (the "University") – which likewise claims ownership of the dress – and Bonhams & Butterfields Auctioneers Corporation ("Bonhams") – an auction house seeking to sell the dress on behalf of the University.  Defendants have moved to dismiss under (1) Fed. R. Civ. P. 12(b)(1) for lack of standing; and (2) Rule 12(b)(6) for failure to state a claim.  For the reasons stated below, Defendants' motion to dismiss will be granted on the basis that Plaintiff has not established standing.

**BACKGROUND**

I. **FACTS**[1]

    A. **Father Hartke**

Gilbert V. Hartke was a Roman Catholic priest and a member of the Dominican order. (Am. Cmplt. (Dkt. No. 39) ¶¶ 6, 9; Shepherd Decl., Ex. B (Allen Aff.) (Dkt. No. 21-13) at 1 ¶ 3)[2] He died on February 21, 1986. (Am. Cmplt. (Dkt. No. 39) ¶ 6) Plaintiff Barbara Hartke is Father Hartke's niece, and she brings this action to recover a dress that allegedly belongs to Father Hartke's estate. (Id. ¶¶ 1, 6, 9)

    Father Hartke taught at Catholic University for many years and served as chair of the University's drama department. (Id. ¶ 9) In this capacity, Father Hartke became a "famous public figure, close to Presidents, First Ladies, Hollywood stars and . . . public figures." (Id. ¶ 14) One such Hollywood friend was the Oscar-winning actress Mercedes McCambridge, who was a "close confidant of Judy Garland." (Id. ¶ 10) McCambridge served as an "artist in residence at the [University's] speech and drama department" and became friendly with Father Hartke, who counseled her regarding alcohol and substance abuse. (Id. ¶¶ 10, 15; Shepherd Decl., Ex. F (Dkt. No. 21-22)) In gratitude for Father Hartke's "counse[l]ing and support," McCambridge gave him a blue pinafore dress with a white blouse, which had been worn by Judy Garland when she appeared as Dorothy in The Wizard of Oz film (the "Judy Garland Dress").

---

[1] The Court's factual statement is drawn from the Amended Complaint and from affidavits, declarations, and other materials submitted in connection with the pending motion to dismiss. As discussed below, for purposes of a Rule 12(b)(1) motion, a court must accept as true all well-pled facts alleged in a complaint, but may also "consider affidavits and other material beyond the pleadings to resolve the jurisdictional issue." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

[2] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

(Am. Cmplt. (Dkt. No. 39) ¶¶ 8, 10)  The friendship between McCambridge and Father Hartke was a "personal relationship," and was "only tangentially related to [Father Hartke's] position at Catholic University."  (Id. ¶ 10) (emphasis omitted)

When Father Hartke became a priest of the Dominican order on August 14, 1933, he renounced material goods and made the following vows:

> In consideration of the laws of the Roman Catholic Church concerning the renunciation of all goods and possessions of a member of a religious community about to make solemn profession. . . .
>
> [I] do hereby declare that by the act of making my solemn profession, I do render myself incapable of possessing temporal goods as my own or of using them with a private right, so that any contrary act, i.e., any act of receiving, retaining, selling, giving, exchanging, profiting etc., on my own authority is an act that is null and void.
>
> [I] do declare that after solemn profession all goods which may in anyway accrue to me individually belong to the Order to be given to the Province or to the Convent according as declared in the Constitutions of the Dominican Order nn. 1139 and 1090, respectively.

(Allen Aff. (Dkt. No. 21-13) at 3)

After taking his priestly vows, Father Hartke was assigned to the College of the Immaculate Conception, a division of the Dominican Fathers of the Province of St. Joseph.  (Id. at 1 ¶ 3)  Consistent with his vows, Father Hartke "turned over his salary" to the College of the Immaculate Conception.  (Id. at 1 ¶¶ 2, 4)

### B.     Probate Proceedings

Father Hartke died intestate in the District of Columbia on February 21, 1986. (Am. Cmplt. (Dkt. No. 39) ¶ 6)  At the time of his death, Father Hartke was a member of the Dominican Fathers of the Province of St. Joseph.  (See Allen Aff. (Dkt. No. 21-13) at 1 ¶¶ 3, 5) In July 1986, the College of the Immaculate Conception – allegedly "the largest creditor of [Father Hartke's] estate" – petitioned the Superior Court of the District of Columbia, Probate

3

Division, to administer the estate. (See Shepherd Decl., Ex. D (Pet. for Probate) (Dkt. No. 21-15) at 1) The College of the Immaculate Conception's treasurer, Father Joseph P. Allen, petitioned the Superior Court to be appointed as personal representative of the Estate. (Allen Aff. (Dkt. No. 21-13) at 1 ¶ 1) In his application, Father Allen states that Father Hartke had no will or tangible property; that he had "agreed [in his priestly vows] to transfer any future property he might receive to the Dominican Order"; and that he "owned no other assets other than the right to publish his name, having delivered all he came into possession of to The College of the Immaculate Conception." (Id. at 1 ¶¶ 2-5) Father Allen further states that "[s]ince the only property subject to administration is the very property which the College [of the Immaculate Conception] claims[,] there is no reason to appoint one of the decedent's heirs [as] Personal Representative." (Id. at 2 ¶ 7)

A copy of Father Allen's petition was mailed to fourteen members of Father Hartke's family, including "Mrs. Barbara Hartke, 1450 N. Astor, Chicago, Illinois 60610," who was misidentified as the "wife of [Father Hartke's] deceased nephew."[3] (Pet. for Probate (Dkt. No. 21-15) at 5) On October 28, 1986, the Superior Court appointed Father Allen as the personal representative of the Estate. (See Shepherd Decl., Ex. C (Inventory) (Dkt. No. 21-14) at 1) On November 14, 1986, Father Allen affirmed that he had mailed a copy of the notice of his appointment to fifteen "heirs and legatees," as required under D.C. Code § 20-704(a) and (b). (Id. at 2) On January 21, 1987, Father Allen filed an inventory of the Estate that listed the only

---

[3] In a "certification" submitted in support of her motion for a preliminary injunction, Plaintiff Hartke states that she has "no recollection of receiving any documentation by mail or otherwise pertaining to the probate of [her] uncle's estate." (Hartke Certification (Dkt. No. 24-1) at ¶ 12) She further states that – while the address listed for her in Father Allen's petition is correct – her apartment number was omitted from the address. (Id.)

item as "[t]he right to publicize the decedent's name." (Id. at 3; see also Am. Cmplt. (Dkt. No. 39) ¶ 6)

The probate court proceedings were closed. (Tso Decl., Ex. D (Dkt. No. 21-5); Am. Cmplt. (Dkt. No. 39) ¶ 6) On June 13, 2022, Plaintiff applied to the Superior Court to reopen the Estate and succeed Father Allen as personal representative. (Am. Cmplt. (Dkt. No. 39) ¶ 17) The record does not indicate what, if any, action the probate court has taken concerning Plaintiff's application.

### C. The Judy Garland Dress

After Father Hartke's death in 1986, the Judy Garland Dress was lost "for decades." (Id. ¶ 9) According to Plaintiff, in 2021 the dress was discovered "in a storage location on the Catholic University campus," among Father Hartke's belongings. (Id.)

In late March 2022, the University entered into a consignment agreement with Defendant Bonhams, an auction house. (Pernes Decl. (Dkt. No. 19) ¶ 3) Bonhams advertised the Judy Garland Dress for auction on May 24, 2022. (Am. Cmplt. (Dkt. No. 39) ¶ 7; see Tso Decl., Ex. H (Dkt. No. 21-9)) On its website, Bonhams asserts that the Judy Garland Dress is worth between $800,000 and $1.2 million. (Tso Decl., Ex. H (Dkt. No. 21-9)) As to provenance, Bonhams lists only McCambridge and the University. (Id. at 2)

## II.   PROCEDURAL HISTORY

The Complaint was filed on May 3, 2022, and asserts claims for conversion and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Dkt. No. 1) The Complaint also seeks a declaration that the Judy Garland Dress is the property of the Estate. (Id. ¶¶ 17-23)

On May 6, 2022, Plaintiff moved for a temporary restraining order and preliminary injunction barring Defendant Bonhams from selling or otherwise disposing of the

5

Judy Garland Dress at the scheduled May 24, 2022 auction. (Dkt. No. 6) On May 23, 2022, this Court granted the application, finding, inter alia, that Plaintiff had "demonstrated that there are sufficiently serious questions going to the merits to make them a fair ground for litigation." (See May 23, 2022 Tr. (Dkt. No. 42) at 12:21-25; see also May 23, 2022 Order (Dkt. No. 26))

The Amended Complaint was filed on June 21, 2022, asserts the same causes of action alleged in the Complaint, but adds a Fifth Cause of Action for "breach of duty to exercise reasonable care." (Am. Cmplt. (Dkt. No. 39) ¶¶ 18-37)[4] Plaintiff claims that the University "acted in reckless disregard of the rights of [P]laintiff and the other heirs" in seeking to auction the Judy Garland Dress. (Id. ¶ 36)

On September 20, 2022, Defendants moved to dismiss the Amended Complaint, arguing that (1) Plaintiff lacks standing to sue either in her own name or on behalf of the Estate; and (2) in any event, the Amended Complaint fails to state a claim. (Mot. (Dkt. No. 52); Def. Br. (Dkt. No. 53))

---

[4] The Amended Complaint pleads as a cause of action Plaintiff's request that this Court enjoin Defendants "from selling property of the Estate of Gilbert V. Hartke[,] including but not limited to the described dress." (Am. Cmplt. (Dkt. No. 39), Fourth Cause of Action, ¶¶ 31-34) An injunction is a form of relief and not a cause of action, however. See Daytree at Cortland Square, Inc. v. Walsh, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018) ("[I]t is well settled that a request for . . . injunctive relief is not an independent cause of action."). An "'injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts.'" KM Enterprises, Inc. v. McDonald, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012), aff'd, 518 F. App'x 12 (2d Cir. 2013) (quoting Warren v. Rodriguez-Hernandez, No. 10 Civ. 25 (FPS), 2010 WL 3668063, at *3 (N.D.W.Va. Sept. 15, 2010)). Accordingly, the Amended Complaint's Fourth Cause of Action will be dismissed.

**DISCUSSION**

I.  **LEGAL STANDARDS**

A.  **Rule 12(b)(1)**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In considering a motion to dismiss under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint," but a court is "not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."). Accordingly, while "general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing]," Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." Baur v. Veneman, 352 F.3d 625, 637 (2d Cir. 2003).

In resolving a Rule 12(b)(1) motion to dismiss, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." J.S., 386 F.3d at 110; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010)

7

("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings.") (citing Makarova, 201 F.3d at 113).

### B. Standing

"'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [her] grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)). "Standing issues go to a court's subject matter jurisdiction and may be raised at any time." Fletcher v. City of New London, No. 3:16-CV-241 (MPS), 2017 WL 690533, at *3 (D. Conn. Feb. 21, 2017).

To establish constitutional standing, a plaintiff must show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan, 504 U.S. at 560-61).

The requisite "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). In other words, "[t]he injury-in-fact requirement demands not only the existence of a legally cognizable injury, but also that the plaintiff [herself] be 'among the injured.'" Keepers, Inc. v. City of Milford, 807 F.3d 24, 42 (2d Cir. 2015) (quoting Lujan, 504 U.S. at 563). Plaintiff bears the burden of establishing the elements of standing, and "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Spokeo, 578 U.S. at 338 (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

"In addition to the immutable requirements of Article III, 'the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.'" Bennett

8

v. Spear, 520 U.S. 154, 162 (1997) (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474-75 (1982)). For example, a plaintiff "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499.

This principle is codified in Rule 17(a) of the Federal Rules of Civil Procedure, which requires that "[a]n action . . . be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In other words, "only a person who possesses the right to enforce [a] claim and who has a significant interest in the litigation can bring the claim." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l, 790 F.3d 411, 421 (2d Cir. 2015) (internal citations and quotation marks omitted). "'The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles.'" Id. (quoting Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989)).

## II. ANALYSIS

### A. Real Party in Interest

In the Amended Complaint, Plaintiff Hartke asserts that she may pursue her claims (1) on her own behalf; and (2) on behalf of her uncle's estate. (Am. Cmplt. (Dkt. No. 39) at 1)

#### 1. Whether Plaintiff Hartke Can Assert Claims on Her Own Behalf

Defendants contend that Plaintiff Hartke cannot assert claims on her own behalf, because the Amended Complaint repeatedly asserts that the Judy Garland Dress belongs to her uncle's estate. (Def. Br. (Dkt. No. 53) at 15; Def. Reply (Dkt. No. 55) at 7; see also Am. Cmplt. (Dkt. No. 39) ¶ 6 (asserting that the Judy Garland Dress "belongs to the Estate of Gilbert V. Hartke"); id. ¶ 8 ("McCambridge specifically and publicly gave the [Judy Garland Dress] to

9

[Father Hartke] and said Dress was at the time of his death and remains an asset of decedent's estate."); ¶ 12 (stating that Plaintiff "seeks immediate return of the Dress to the Estate of Gilbert V. Hartke"); ¶ 22 (seeking "a declaration that the right to possession of the dress by the Estate of Gilbert V. Hartke is valid, enforceable, and superior to any claim by defendants"); ¶ 23 (asserting that the Estate of Gilbert V. Hartke has a "right to possession" of the Judy Garland Dress))

Having repeatedly asserted in the Amended Complaint that the Judy Garland Dress belongs to the Estate of Gilbert V. Hartke, Plaintiff Hartke has not pled facts demonstrating that she is a "real party in interest" under Fed. R. Civ. P. 17(a). See Meimaris v. Royce, No. 18 Civ 4363 (GBD) (BCM), 2019 WL 4673572, at *5 (S.D.N.Y. Sept. 25, 2019), aff'd, 2021 WL 5170725 (2d Cir. Nov. 8, 2021) (summary order) (concluding that plaintiff could not sue in her individual capacity because "all the interests that [d]efendants allegedly invaded belonged to [d]ecedent"). Accordingly, Plaintiff's claims will be dismissed to the extent they are brought on her own behalf.

### 2. Whether Plaintiff Hartke Can Assert Claims on Behalf of the Estate

Defendants further contend that Plaintiff Hartke cannot assert claims on behalf of the Estate, because she is not a personal representative of the Estate. **(**Def. Br. (Dkt. No. 53) at 16-17)

Fed. R. Civ. P. 17(a) allows an executor or administrator of an estate to "sue in their own names without joining the person for whose benefit the action is brought." Fed. R. Civ. 17(a)(1). But Plaintiff Hartke is not the executor or administrator of the estate of Gilbert V. Hartke. Accordingly, Rule 17(a)(1) does not authorize Hartke to sue on behalf of the Estate.

Where, as here, a party is not the executor or administrator of an estate but purports to be acting as a representative of the estate, capacity to sue on behalf of the estate is governed by Fed. R. Civ. P. 17(b)(3). Rule 17(b)(3) states that capacity to sue in such

circumstances is governed "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).  See Garmon v. Cnty. of Rockland, No. 10 Civ. 7724 (ALC) (GWG), 2013 WL 541380, at *2 (S.D.N.Y. Feb. 11, 2013) (applying Rule 17(b)(3) to determine a plaintiff's capacity to litigate on behalf of the decedent's estate, where plaintiff had not been named as executor or administrator of the estate).

New York law is clear that – absent "extraordinary circumstances" – "[o]nly a duly appointed personal representative may bring suit on behalf of a decedent."  Garmon, 2013 WL 541380, at *3 (citing Palladino v. Metro. Life Ins. Co., 188 A.D. 2d 708, 709 (3d Dept. 1992)); Aetna Life Ins. Co. v. Frank, 592 F. Supp. 3d 317, 322 (S.D.N.Y. 2022) ("Under New York law, absent extraordinary circumstances, actions brought on behalf of an estate must be brought by an executor or administrator."); N.Y. Est. Powers & Trusts § 11-3.1 ("Any action . . . may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent.").  A "personal representative" of an estate is "a person who has received letters to administer the estate of a decedent."  N.Y. Est. Powers & Trusts § 1-2.13.

Here, the Amended Complaint pleads that the D.C. Probate Court appointed Father Allen to serve as the personal representative of Father Hartke's estate.  (Am. Cmplt. (Dkt. No. 39) ¶ 6)  While the Amended Complaint also pleads that on "June 13, 2022, [P]laintiff applied in the Superior Court of the District of Columbia, Probate Division, to reopen the Estate and to succeed Allen as personal representative" (id. ¶ 17), no party has advised the Court as to the resolution of Plaintiff's application.  With the record silent on this issue, the Court assumes that the Probate Court has not appointed Plaintiff to serve as the personal representative of the Estate, and that she has not received any letters of administration.  In the absence of evidence

11

that Plaintiff has been appointed as executor, administrator, or in some other capacity as the personal representative of the Estate, she lacks standing to bring this action.  See Garmon, 2013 WL 541380, at *3 ("Since Plaintiff was not named the administrator of the estate, [s]he does not have standing to bring claims belonging to the decedent."); Joachim v. United States, No. 22-CV-5719 (DLI) (RML), 2023 WL 6292542, at *3 (E.D.N.Y. Sept. 27, 2023) ("[A]s Plaintiff was not the administratrix [of the decedent's estate] at the time she commenced this lawsuit in state court, the Court lacks subject matter jurisdiction."); Brandon v. Columbian Mut. Life Ins. Co., 264 A.D. 2d 436, 436 (2d Dept. 1999) ("The plaintiff lacks standing to sue on behalf of the decedent's estate since she has not received letters of administration."); Palladino, 188 A.D. 2d at 709 ("Inasmuch as letters of administration have not been issued to plaintiff, he has no standing to sue.").

Although the Amended Complaint alleges that Plaintiff brings this suit as "the closest living heir of the decedent" (Am. Cmplt. (Dkt. No. 39) ¶¶ 6, 11), this allegation is not sufficient to demonstrate standing.  "[H]eirs [ ] generally have no standing to sue because 'legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property.'" Rai v. Rai, No. 21 Civ. 11145 (PAC), 2023 WL 2456831, at *3 (S.D.N.Y. Mar. 10, 2023) (quoting Witzenburg v. Jurgens, No. CV-05-4827 (SJF), 2007 WL 9710763, at *9 (E.D.N.Y. Mar. 1, 2007); Lefkowitz v. Bank of N.Y., No. 01 Civ. 6252 (VM), 2003 WL 22480049, at *6 (S.D.N.Y. Oct. 31, 2003) ("Typically, when a testator dies, the executor, not the beneficiary, acquires standing to pursue claims on behalf of the testator and the estate.").[5]

---

[5] In arguing that she has standing, Plaintiff cites LeSEA, Inc. v. LeSEA Broad. Corp., No. 18-CV-914 (PPS) (MGG), 2021 WL 860939 (N.D. Ind. Mar. 5, 2021) – which applies Indiana law –

Moreover, there are no "extraordinary circumstances" here that authorize Plaintiff to bring a claim on behalf of the Estate under New York law. "Extraordinary circumstances" are implicated "'where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate,'" Aetna, 592 F. Supp. 3d at 322 (quoting Lewis v. DiMaggio, 115 A.D. 3d 1042, 1044 (3d Dept. 2014)); or in "cases of collusion, of insolvency of the personal representatives, of refusal by them to sue, whether collusively or bona fide . . . or of the existence of other special circumstances such as the fraudulent transfer of the trust property by the personal representatives themselves." Lefkowitz, 2003 WL 22480049, at *6.

Here, the Amended Complaint pleads,

> [u]pon information and belief, [that] decedent had in his possession substantial property at his death and the statement of [Father] Allen that there was no personalty than [the right to publicize the decedent's name] was false, fraudulent amounting to perjury, or at the very least, reckless disregard for the truth. No other personal property of decedent was listed on this purported inventory. The estate was, upon information and belief closed, as there were no reported assets.

(Am. Cmplt. (Dkt. No. 39) ¶ 6)

These allegations are not sufficient to plead "extraordinary circumstances."

As an initial matter, because Plaintiff accuses Father Allen of committing fraud, her allegations must be – but are not – pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud. . . ."); see also Lewis, 115 A.D. 3d at 1044 (applying "extraordinary circumstances"

---

and Strasberg v. Odyssey Group Inc., 51 Cal. App. 4th 906 (Cal. App. 1996) (wrongly cited by Plaintiff as 59 Cal. App. 2d 474 (Cal. App. 1998)) – which applies California law.  See Pltf. Opp. (Dkt. No. 57) at 4-5)  As discussed above, Plaintiff's capacity to sue on behalf of the Estate is governed by New York law, and the law of Indiana and of California is irrelevant to that determination.

standard in action brought by beneficiaries of an estate, noting that in cases "involving fraud or undue influence, the complaint must set forth in detail the circumstances constituting the wrong"). The particularity requirement is not excused merely because a plaintiff's allegations of fraud are made on information and belief. Where a complaint is premised on "information and belief" allegations, the expressed "belief [must be] based on factual information that makes the inference of culpability plausible." Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). And a plaintiff must, of course, "accompany [her] allegation[s] with factual assertions that 'raise a right to relief above the speculative level.'" Moreira v. Societe Generale, S.A., No. 20-CV-9380 (JMF), 2023 WL 359446, at *2 (S.D.N.Y. Jan. 23, 2023) (quoting Morana v. Park Hotels & Resorts, Inc., No. 20-CV-2797 (RA), 2021 WL 1164010, at *3 (S.D.N.Y. Mar. 26, 2021)); Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

But Plaintiff Hartke has not accompanied her "information and belief" allegations of fraud with "factual information that makes the inference of culpability plausible." Arista Recs., 604 F.3d at 120. Indeed, the record contains no facts suggesting that Father Allen acted in bad faith in reporting – in the inventory he prepared – that the Estate's only asset was "[t]he right to publicize the decedent's name." (Inventory (Dkt. No. 21-14) at 3; Allen Aff. (Dkt. No. 21-13) at 1 ¶ 5)

As an initial matter, Plaintiff Hartke pleads no facts suggesting that Father Allen – contrary to his inventory – knew that Father Hartke "had in his possession substantial property at his death." (Am. Cmplt. (Dkt. No. 39) ¶ 6) Indeed, the Amended Complaint does not allege that Father Hartke possessed any specific item of "personal property" at the time of his death other

14

than the Judy Garland Dress. (See id. ¶ 8 (listing only the Judy Garland Dress as "an asset of decedent's estate")) And Plaintiff pleads no facts suggesting that Father Allen knew that Father Hartke was in possession of the Judy Garland Dress at the time of his death. Plaintiff instead pleads that after Father Hartke's death in 1986, the Judy Garland Dress was "missing for decades," and was only discovered on the University campus in 2021. (Id. ¶ 9; see also ¶ 17 (noting a "new asset of the [estate] had been discovered, namely the [Judy Garland D]ress")) But Plaintiff has not pled facts suggesting that Father Allen was affiliated with the University at the time of Father Hartke's death in 1986 (see id. ¶ 6 (describing Father Allen as the "Treasurer of the College [of the Immaculate Conception]" in July 1986)), or explaining why Father Allen would have known that Father Hartke was in possession of the Judy Garland Dress at the time of his death, given that it had gone "missing." (Id. ¶ 9)

In any event, Father Allen's representation that Father Hartke "owned no [physical] assets" at the time of his death was premised on his understanding of the religious vows Father Hartke had taken at the time he was ordained as a priest of the Dominican order on August 14, 1933. (Allen Aff. (Dkt. No. 21-13) at 1 ¶¶ 2-5) In the affidavit that Father Allen submitted to the Probate Court in 1986, he explains that Father Hartke had become a Dominican priest in 1933, and that he had made a "solemn profession" at that time "declar[ing]" that "any act of receiving, retaining . . . giving" goods "on [his] own authority is an act that is null and void." (Id. at 3) At the time of his ordination in 1933, Father Hartke also entered into a Renunciation of Temporal Goods, in which "he agreed to transfer any future property he might receive to the Dominican Order." (Id. at 1 ¶ 2; see also at 3) And throughout his life as a priest, Father Hartke tendered his income to the College of the Immaculate Conception, consistent with and as mandated by his vows. (Id. at 1 ¶ 4) Given Father Hartke's vow of poverty; his

15

renunciation of temporal goods in favor of the Dominican order; his observance of his vows of poverty during his priesthood; and the fact that Father Hartke remained a member of the Dominican order at the time of his death, it was not fraudulent or reckless for Father Allen to represent to the D.C. Probate Court that Father Hartke owned no physical assets at the time of his death, "having delivered all he came into possession of to the College of the Immaculate Conception."  (Id. at 1 ¶ 5)[6]

In sum, there is no basis for this Court to find – on the current record – that "extraordinary circumstances" exist such that Plaintiff Hartke may bring a claim on behalf of the Estate, even though she has not been appointed as a personal representative for the Estate.

Because Plaintiff Hartke has not pled facts demonstrating that she is authorized to bring a claim on behalf of the Estate, she lacks standing to bring this action, and her claims must be dismissed.

## III. LEAVE TO AMEND

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend."  Gurary v. Winehouse, 235 F.3d 792,

---

[6] The Supreme Court has long interpreted vows of poverty as enforceable agreements between the individual who took the vow and the religious order he or she joined.  Order of St. Benedict of New Jersey v. Steinhauser, 234 U.S. 640, 648-49 (1914) (recognizing the member's vow to renunciate "gains and acquisitions" to the Order acted as consideration in return for "the privileges of membership, and to further the common purpose to which the members are devoted"); see also Cox v. Commissioner, 297 F.2d 36, 37 (2d Cir. 1961) (characterizing the religious vows as a "contract," which "under New York law[,] was enforceable against [the priest] according to its terms and the laws of the Society [of Jesus]"); Wisconsin Province of Soc'y of Jesus v. Cassem, No. 17-CV-1477 (VLB), 2018 WL 9801769, at *1 (D. Conn. May 24, 2018) (citing Steinhauser and Cox for the conclusion that the vow formed a "contract," "in which [the Father] tendered his income to the Province," and "[i]n return for these vows, the Province provided for [the Father's] wants and needs").

801 (2d Cir. 2000). Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 Civ. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., No. 07 Civ. 10453 (RWS), 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

While it appears doubtful that Plaintiff Hartke can plead facts demonstrating that she has standing to pursue her claims, this Court will give her an opportunity to move for leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing is granted. Any motion for leave to amend is to be filed by **December 20, 2023**. The proposed Second Amended Complaint is to be attached as an exhibit to the motion papers.

By **December 20, 2023**, Plaintiff Hartke will show cause why this Court's May 23, 2022 preliminary injunction order should not be vacated.

The Clerk of Court is directed to terminate the motion (Dkt. No. 52).

Dated: New York, New York
December 11, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge