## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA ANN HARTKE, an individual on her own behalf and on behalf of the Estate of decedent Gilbert V. Hartke<br><br>*Plaintiff,*<br><br>v.<br><br>BONHAM'S & BUTTERFIELD'S AUCTIONEER'S CORPORATION, a Delaware Corporation; The Catholic University of America, a Non-Profit District of Columbia Corporation<br><br>*Defendants.* | Civil Action No.:  22-3571 |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO (1) AMEND THE VERIFIED COMPLAINT IN THE  FORM PROPOSED AND (2) CONTINUE PRELIMINARY INJUNCTION.**

**Statement of Facts**

Plaintiff Barbara Hartke hereby refers to and incorporates by reference the facts as asserted in her proposed and executed Verified Complaint with Affidavits and Exhibits attached, submitted in support of her motion for leave to file same.

**Legal Argument**

### I. Plaintiff has standing to pursue the claims in the proposed amended complaint on behalf of the Estate

While sufficiency of standing is normally to be evaluated from the date of commencement of a lawsuit, courts are empowered to permit a lawsuit to survive dismissal under Rule 12( b)(6) where the real party in interest is properly substituted 9for the party lacking standing pursuant to  Rule  17(a)(3); <u>King v. Wang,</u> No. 14-civ-7694 (S.D.N.Y. 2018).  An action should not be dismissed for failure to prosecute in the name of the real party of interest until, after an objection, a reasonable time has been allowed for the real party interest to ratify, join, or be substituted into the action.  Id., quoting F.R. Civ. Pro. 17(a)(3).  Thus, a standing defect does not require dismissal of the action with prejudice where the real party in interest wishes to substitute for the plaintiff that lacks standing, and, in proper situations, the Court should allow the parties a reasonable time to effect substitution.

In <u>Wang,</u> plaintiff King was the daughter of decedent, an art collector and artist who died in July 2003. The latest will from 2003 designated, not King, but instead, decedent's grandson Wang as executor; the will was admitted to probate with Wang appointed as preliminary executor pending appointment of a permanent executor. In that temporary position, Wang arranged for the

sale of the estate's valuable artwork collection to third parties at much less than market value; Wang then colluded with those parties to resell the artwork at much higher prices. The scheme was not detected for nine or ten years.  King (and her two closely held  companies) then filed a civil lawsuit in this District seeking damages under state law for conversion, civil conspiracy, common law fraud as well as for civil violations the federal racketeering statute (RICO). The Complaint  named as defendants Wang and 13 other colluders (described in the opinion as "straw men").  The matter was immediately dismissed under Rule 12 (b)(6) for King's lack of standing as estate representative, applicability of the federal probate exception to jurisdiction (also raised here[1]), and to uphold federal abstention principles. She appealed dismissal to the Second Circuit, and simultaneously filed a challenge in New York State Probate Court to the 2003 will. In 2016, that will was deemed invalid for decedent's lack of testamentary capacity as well as his having been unduly influence Wang who was removed as executor. A 2000 will naming King as executor was then submitted to probate.  After reversal and remand, the federal suit was dismissed a second time for lack of standing,  as well as for expiration of the statute of limitations on the federal claims. Decedent later sought reconsideration after New York appointed her as *preliminary* executrix, while  awaiting acceptance of the 2000 will to probate . The court granted the motion to reconsider its earlier ruling dismissing for lack of standing,

---

[1] The court in Wang held that the federal probate exception applied to the Estate's claims for constructive trust and replevin because the artwork there had already been under the control of the NY Surrogate's Court. The court, distinguished and quoted with approval Marcus v. Quattrochi, 715 F. Supp. 524, 534 (S.D.N.Y. 2010), which held that "requests to return property of an estate do not fall within the probate exception … if the *res* at issue was not part of the estate at the time of death." Plaintiff here asserted that position in her original opposition papers nothing that the Dress was not found in the inventory of possessions prepared by Father Allen and not treated as part of the Estate under control of the DC Probate Court, therefore claims for its return should not be barred by the probate exception. As the court here did not grant defendants' motion to dismiss on those grounds, plaintiff continues assert that the federal probate exception is inapplicable here.

noting that Rule 17 (a)( 3) provides that   "substitution of plaintiffs should be liberally allowed

when the change is merely formal and in no way alters the original complaint's factual

allegations as to the events or participants." The court cited other decisions in this Circuit court

that permitted actions to proceed where the original plaintiff was an invalid estate representative,

but then substituted for by the valid representative. Id., citing Estwick v. US Air Shuttle, 950 F.

Supp 493 (N.D.N.Y. 1996) and  Brohan on behalf  of Brohan v. Volkswagen  Manufacturing

Corp., 97 F.R.D. 46, 48 (E.D.N.Y. 1983).

As reason for granting reconsideration and reinstatement of the Complaint, the court in

Wang quoted Brohan, supra, at 49, held, "lateness in obtaining a pleading (one's) to appointment

as executrix is the kind of technical mistake apparently contemplated by Rule 17(a)."  The court

also pointed out that where a request to substitute the real party in interest was made within a

reasonable time, and there is no evidence that the delay was a tactic undertaken in bad faith and

the opposing party is not prejudiced, the action should properly proceed especially In where it is

established defendants had clear notice of the claim even if the real party in interest was not the

original plaintiff. Ibid.  Also deemed important by the Wang court is that the parties seeking to

substitute did not delay in bad faith. The court therefore held that King as preliminary executrix,

had standing to sue on behalf of the estate.

Here, plaintiff has sworn in detail in the proposed Second amended Verified Complaint

as to steps she has employed to be appointed as estate representative since the complaint was

filed. As noted in the new factual allegations, she first retained counsel and instituted the process

seeking to be appointed permanent estate representative, however the difficulties in obtaining

court records caused significant unforeseen delays and she has now filed an application to be

appointed Special Administrator. While the court properly may consider a 12(b)(6) at any stage

of the proceedings, the court should not normally engage in "pruning" of the complaint regarding each separate allegation when  considering dismissal under Rule 12(b)(6) and instead conduct such review after the parties enegage in discovery and employing the standards for summary judgment under Rule 56. Bernheim v. Litt, 79 F. 3d 318 (2d Cir. 1996).

Plaintiff here maintains that New York preliminary letters of Administration as issued in the Wang case are essentially the equivalent of the District of Columbia's reasons for appointment of a special administrator and confers standing of such administrator to pursue claims on behalf of a decedents Estate.  District of Columbia Code § 20-533 entitled Powers and Duties provides as follows:

> A special administrator shall have the duty and all powers
> necessary to collect, manage, and preserve the property in addition
> to any other powers authorized by the Court.  Upon the
> appointment of a personal representative the special administrator
> shall account for the property of the decedent.

It is plaintiff's position that she has demonstrated due diligence in seeking appointment as personal representative and then seeking appointment as special administrator,  pending appointment of a personal representative. As special administrator, District of Columbia law would empower her to collect manage and preserve estate property, pending appointment of the permanent personal representative. As such, she as special administrator clearly would have standing to be  substituted as real party in interest and the court should and must grant leave to file the amended complaint in the proposed form and the matter permitted to proceed in due course.

**II.      The court's decision, in addressing the validity of the vow of property in the context of extraordinary circumstances to evaluate standing, amounted to instead an evaluation of the likelihood of success on the merits and  threat of irreparable harm where both clearly exist, therefore requiring continuation of preliminary restraints.**

The Court here infers that the existence of the Document of Renunciation of Temporal Goods proffered by defendant and apparently executed in 1933 by decedent (referred to informally as his "vow of poverty") negates the existence of extraordinary circumstances in light of Father Allen's inventorying of the Estate and finding no tangible personal property.  The court decision essentially props up and knocks down a straw man argument never made by plaintiff, by asserting that, because Allen is alleged to have committed fraud in fulfilling his duties as personal representative, plaintiff should have standing to represent the estate as an unappointed individual, fraud on the part of the executor being a recognized exception to the personal representative requirement in New York constituting an extraordinary situation. Plaintiff has never raised the argument that such circumstances existed and instead has throughout asserted that, whether or not extraordinary circumstances exist, she still has standing to proceed as an individual, at least until she is either appointed special administrator or a personal representative (she, or someone else) is appointed and the estate representative is substituted as a party. See, infra. Simply put, whether or not these circumstances are deemed extraordinary, it betrays the interest of justice to dismiss the claim with prejudice when defendants have full notice of the claims she seeks to pursue on behalf of the estate and has suffered no prejudice in the period in which she has diligently sought to be appointed to represent the estate to retrieve after-discovered property.

But, despite the fact that plaintiff has not sought to argue that Allen's misrepresentations, whether intentional or otherwise (it should be noted that the Complaint also alleges he may have simply committed gross negligence by failing to follow statutory requirements) constitutes extraordinary circumstances, the court may also be tacitly inferring that the existence such a vow makes her less likely to succeed on the merits, warranting removal of the preliminary injunction.

It must be pointed out in response that, at least under New York law (as there appears to be no direct District of Columbia authority) , the vow of poverty is properly treated as a mere contract and does not permit an estate representative to bypass probate procedures for those alleged to be subject to same. See In re Estate of Attea, 12 N.Y.S. 3rd 522 (NY Surrogate Court 2015). There decedent nun's congregation sought summary judgment dismissing probate procedures where decedent was subject to a similar vow to her Congregation. At issue was the right to claim the large proceeds of a settled lawsuit and other assets where decedent had executed a Will bequeathing her residual estate to her family.  The congregation asserted that, because decedent was bound by a vow of poverty, they were as a matter of law entitled seize the lawsuit proceeds and other assets bypassing any need for probate of the will.  The New York Surrogate's  Court denied the Congregation's motion holding the vow of poverty did not supersede the statutory probate procedures. The Court instead held that the claimed existence of the vow was simply a "contract to make a testamentary disposition" and separate and distinct from the Will itself. The court stated:

> The fact that decedent may have bound herself to a different disposition of her property by way of a prior agreement – an issue which I need not and do not decide,  and which I express no opinion on at this juncture – is not a basis to deny probate of the 1994 Will if it is otherwise valid.  If the 1994 Will is ultimately admitted to probate, the congregation may well seek relief as to the alleged assets of the estate premised upon its prior contract theory but that is clearly a matter for another day.

The Court here found the Complaint did not specifically plead fraud with respect to its allegations against Father Allen and for that reason failed to demonstrate extraordinary circumstances permitting plaintiff to proceed prior to being named personal representative of the estate.  District of Columbia probate law provided that personalty had to be inventoried by the personal representative, not just for the estate's beneficiaries, but also to disclose to the District what property might be subject to inheritance tax. Plaintiff maintains that, by failing to follow probate procedures. Allen was, in fact, misrepresenting the personalty in the estate which, not only harms the beneficiaries, but would also effectively deprive the District  of inheritance tax that might be due from the Estate. See D.C. Code 47-1901 (1987); Richardson v. D.C., 522 A. 2d 1295 (1987);  D.C. v. Von Schrader, 345 A. 2d 475 (D.C. Ct. App. 1975)(quoting predecessor statute).  Because Father Allen failed to properly inventory the estate pursuant to the rules of the District of Columbia, by prematurely presuming that the vow of poverty prevented his personally from being part of decedent's estate, he was in fact, acting outside the scope of his duties as estate representative by interpreting "a contract to make a testamentary disposition" without judicial authority.   Essentially, Father Allen was acting as an unappointed judge by making decisions under the jurisdiction of the Probate court. Whether (perhaps) insufficient to specifically plead a cause of action for fraud,  the factual allegations are sufficient to demonstrate a probability of success that the estate will be deemed the rightful owner of the after discovered Dress as no proper inventory was ever conducted.

The court in its original decision noted that the First Amended Complaint failed to document any personal property of decedent other than the Dress. Attached as an exhibit  to the

proposed Second Amended Complaint is an Affidavit of plaintiff with photographic exhibits [2] documenting her specific recollection of other valuable personalty possessed by decedent, as well as the Dress. Decedent's fondness of possessions and memorabilia[3] was well known to relatives, friends and even acquaintances. The inventory of Allen defies credibility, unless, as appears obvious, he illegally and prematurely enforced the vow of poverty which, as noted, is only, at best, "a contract to make a testamentary disposition" (Attea, supra), and not a document recognized by the DC probate statute.

  The reasons plaintiff asserted as grounds for establishing a reasonable probability of eventual success at the outset, given the Estate's claims for conversion and its claim for return of personal property to decedent's estate, also known as replevin, have not changed. Conversion takes place when someone intentionally and without authority assumes or exercises control of personal property belonging to someone else, interfering with that person's right or possession. Reif v. Nagy, 175 A.D. 107 (1st Dept. 2019). Replevin is the common law civil action where an owner seeks to regain possession of his property that is taken or being held by another. Black's Law Dictionary. In order to state a cause of action for replevin a plaintiff must allege that he or she owns the property, is legally entitled to possess it, and that the defendant unlawfully withheld the property from the plaintiff. Khoury v, Khoury, 912 NYS 2d 235 (2d Dept. 2010). To establish a cause of action for replevin, a plaintiff must establish a superior possessory right to property in a defendant's possession. Reif, supra.

---

[2] Pleadings for purposes of 12(b)(6) motions include not just the four corners of the Complaint but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference. Deluca v. Accessit Corp., 695 F. Supp. 2d 54 (S.D.N.Y. 2010),

[3] Failure of an executor, who was also an attorney, to inventory personal property and memorabilia of an estate, permitting the car to be used by a stranger and failing to liquidate bank accounts was deemed a breach of professional responsibility by commission of gross negligence warranting disbarment. Matter of Berger, 565 NYS 2d 848 (A.D. 1991)

Here plaintiff can certainly demonstrate that the Estate is the rightful owner of the property in question; the provenance in the form of the gift to decedent from one Mercedes McCambridge was well documented when and after it occurred in 1973. There are photographs and  newspaper articles reporting the gift and displaying the Dress. (See, e.g. photos attached to plaintiff's affidavit.  Thus, the valid gift from McCambridge is essentially undisputed. What is disputed is defendant Catholic University's claim that decedent gave either an *inter vivos* gift or prior enforceable promise to give the subject property to the University. To create an *inter vivos* gift, there must be intent on the part of the donor to present the gift to the purported donee. <u>Reif, supra.</u> The proponent of a gift has the burden of proving each of these elements by clear and convincing evidence. Ibid.

The general common-law rule is that the finder of mislaid property on premises of another acquires no special property in it and that the right of possession as against all except the true owner is in the owner or occupant of the premises where the property was discovered. This rule is based on the legal fiction that mislaid property is presumed to have been left in the custody of the owner or occupier of the premises upon which it is found (1 <u>Am. Jur.2d,</u> *Abandoned, Lost and Unclaimed Property*, sec. 23; <u>Hurley v. City of Niagara Falls,</u> 289 NYS 2d 889 (A.D. 1968). Defendant Catholic University somehow now claims that by finding the Dress on its premises, it is theirs, and scoffs at plaintiff's allegations in this case, like a child mocking another after finding their toy left behind in their playpen. Lawyers all learned the phrase possession is 9/10 of the law, but that was before they enrolled in first year property law.

Here, decedent's original ownership of the dress has been established and there is no evidence that he ever made it a valid *inter vivos* gift or, obviously, testamentary bequest to defendant Catholic University. Plaintiff can establish a probability of success that hers and the estate's claims for conversion and replevin will both be successful.  What prejudice will be

caused by delay, given that Catholic's ownership claim is completely suspect from the outset is basically zero. If their claim is, arguendo, affirmed, it would be more akin to a claim for title treasure trove than a vindication of an actual property interest.

A preliminary injunction is an equitable remedy issued to maintain the status quo until there can be a hearing on the merits. Sierra Club v. US Army Corps of Eng'rs, 732 F. 2d 253, 256 (2d Cir. 1984). The decision whether to modify or vacate a preliminary injunction is committed to the inherent discretion of the district court. Id. at 256-57. The test of that discretion is measured by whether vacatur effectuates or thwarts the purpose behind the injunction. Id. at 257. Thus, a district court may modify or vacate a preliminary injunction when necessary to preserve the status quo. Museum Boutique International v. Picasso, 880 F. Supp. 153 (S.D.N.Y. 1995); citing Sierra Club, supra,  at 257.

Vacatur of the preliminary injunction here will certainly thwart the purposes for the original injunction and not effectuate it. Irreparable harm is an injury that is not remote or speculative but actual and imminent and for which a monetary award cannot be adequately compensated. Tom Doherty Assocs. v. Saban Enterprises, 60 F. 3d 27 (2d Cir. 1995). Loss of a unique product with established exceptional appeal caused by denial of injunctive relief (or vacatur of same) creates a clear presumption of extreme or serious damage. Ibid. A permanent loss by sale at auction of items of sentimental value that are unique and irreplaceable justifies a presumption of clear and serious harm should the injunction be dissolved. See, e.g. Holyfield v. Julian Enterprises, Civ. No. 12-9388 (C.D. Ca. 2012). (champion boxer's robes from first professional fight and from fight where he won the championship, gloves used in the title fight

against Mike Tyson, as well as Olympic memorabilia and championship belts, were presumed

unique and irreplaceable as court found loss could not be remedied by monetary damages). The

Dress here is unique, irreplaceable and its sale cannot be remedied by an award of money for

many reasons, most obviously because any potential replicas lack the familial history and

personal connection of the authentic dress, making it irreplaceable for Barbara Ann Hartke.

In addition, there are numerous other considerations which clearly establish that

dissolution of the injunction auctioning the Dress will cause substantial and irreparable harm to

the plaintiff and decedent's estate and legacy as follows:

1. Cultural Significance within the Family:

The Dress holds immense sentimental value within the Hartke family, symbolizing a cherished
artifact owned by GVH.

New York case law recognizes the importance of preserving family heritage and sentimental
items, emphasizing the unique emotional connections they hold. See In re Estate of Terzani, 5
NYS 3d 330 (Surr. Ct. 2014)( wife removed as administrator for gross neglect and dereliction of
administrative duties for failure to inventory or preserve decedent's possessions and memorabilia
from his stint in the Marine Corps and where she displayed a "cavalier attitude" toward his
property that had great sentimental value to his immediate family).

2. Unique Historical Importance for Gilbert V. Hartke:

Gilbert V. Hartke's significant contributions to the arts and film industry underscore the dress's
unique historical importance.

New York courts acknowledge the preservation of historically significant items, especially those
tied to individuals with notable (or in some instances, notorious, infra) contributions to society.
See, e.g. In re American Historical Association, 49 F. Supp. 2d 274 (S.D.N.Y. 1999), (historical
significance of grand jury transcripts pertaining to investigations of Alger Hiss' alleged
espionage activities for the Soviet Union against the United States overcomes strong
presumption of secrecy).

3. Lack of Substitute for Family Connection:

Any potential replicas lack the familial history and personal connection of the authentic dress,
making it irreplaceable for Barbara Ann Hartke.

New York case law recognizes the importance of authenticity in preserving family legacies, particularly when it comes to unique and irreplaceable items. <u>Hahn v. Duveen</u>, 133 Misc. 871 (NY Sup. Ct. 1929)(action for slander of title to prove plaintiff's property was an authentic Leonardo DaVinci painting after defendant said it was a replica or duplicate creates factual questions for jury resolution).

4. Risk of Irreversible Loss of Family Heritage and public interest in Preserving Family Legacies:

The potential sale or transfer of the dress poses a risk of irreversible loss and the severance of its historical connection to Gilbert V. Hartke. The dress, as part of the Hartke family's cultural heritage, extends beyond private possession and aligns with broader public interest in preserving cultural artifacts.

New York case law recognizes the societal value in protecting and preserving items with broader cultural significance, especially within the context of family legacies. See, e.g. <u>Borghese Trademarks Inc. v. Borghese,</u> 10 Civ. 5552 (S.D.N.Y. 2013) (rich family legacy and history has value when used in branding beauty products where the Princess Marcella Borghese (of Rome's famous former royalty Borghese family) many years before began such legacy in the beauty industry.

**CONCLUSION**

Based on  the above facts and law, this court should grant leave to plaintiff to file a Second Amended Verified Complaint in the form attached to the motion, and deem the preliminary injunction continue until a disposition on the merits.

Respectfully submitted,

s/ Anthony Scordo

Anthony Scordo, attorney for plaintiff Barbara Ann Hartke

Dated: January 2, 2024