UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARBARA ANN HARTKE, an individual on her own behalf and on behalf of the Estate of decedent Gilbert V. Hartke,

      Plaintiff,

- against -

BONHAMS & BUTTERFIELDS AUCTIONEERS CORPORATION and THE CATHOLIC UNIVERSITY OF AMERICA,

      Defendants.

**MEMORANDUM**
**OPINION & ORDER**

22 Civ. 3571 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Barbara Hartke – on behalf of the estate of Gilbert V. Hartke (the "Estate") – asserts rights to a dress worn by Judy Garland in The Wizard of Oz film. (Mot. to Amend (Dkt. No. 69); Proposed Second Amended Complaint ("SAC") (Dkt. No. 69-1))

    Plaintiff Hartke filed this action on May 3, 2022, asserting claims for conversion, false advertising, and breach of duty, and seeking a declaratory judgment and permanent injunction. (Am. Cmplt. (Dkt. No. 39) ¶¶ 18-37; see also Cmplt. (Dkt. No. 1))[1] Defendants are the Catholic University of America (the "University") – which likewise claims ownership of the dress – and Bonhams & Butterfields Auctioneers Corporation ("Bonhams") – an auction house seeking to sell the dress on behalf of the University. (Am. Cmplt. (Dkt. No. 39) ¶¶ 2-3)

    On September 20, 2022, Defendants moved to dismiss the Amended Complaint. (Mot. to Dismiss (Dkt. No. 52)) On December 11, 2023, this Court granted Defendants' motion

---

[1] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, concluding that Plaintiff had not established standing. See Hartke v. Bonhams & Butterfields Auctioneers Corp., No. 22 Civ. 3571 (PGG), 2023 WL 8551889, at *1, *9 (S.D.N.Y. Dec. 11, 2023) (the "Dismissal Order"). Dismissal was with leave to move to amend. Id. at *9.

On January 2, 2024, Plaintiff Hartke moved – pursuant to Fed. R. Civ. P. 15(a)(2) – for leave to file a Second Amended Complaint. (See Mot. to Amend (Dkt. No. 69)) In the proposed SAC, Plaintiff re-pleads her claims for conversion, false advertising, breach of duty and for a declaratory judgment, and adds a new cause of action for replevin. (See SAC (Dkt. No. 69-1) ¶¶ 19-38)

For the reasons stated below, Plaintiff's motion for leave to file the proposed Second Amended Complaint will be denied.

## BACKGROUND[2]

### I. FACTS[3]

Gilbert V. Hartke was a Roman Catholic priest and a member of the Dominican order. (SAC (Dkt. No. 69-1) ¶ 9; Shepherd Decl., Ex. B (Allen Aff.) (Dkt. No. 21-13) at 1 ¶ 3)[4]

---

[2] The relevant facts are set forth in greater detail in the December 11, 2023 Dismissal Order, Hartke, 2023 WL 8551889, at *1-4, and are only summarized below. Familiarity with the Dismissal Order is assumed.

[3] The Court's factual statement is drawn from the proposed SAC, and from affidavits, declarations, and other materials submitted in this action. For purposes of resolving Plaintiff Hartke's motion to amend, a court must accept as true all well-pleaded facts in the SAC, but may also "consider affidavits and other material beyond the pleadings to resolve the jurisdictional issue." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see Gary Friedrich Enters., LLC v. Marvel Enters., Inc., No. 08 Civ. 1533 (BSJ) (JCF), 2011 WL 1142916, at *4 (S.D.N.Y. Mar. 22, 2011).

[4] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

He died on February 21, 1986. (SAC (Dkt. No. 69-1) ¶ 6)  Plaintiff Barbara Hartke is Father Hartke's niece, and she brings this action to recover a dress that allegedly belongs to Father Hartke's estate. (Id. ¶¶ 1, 6, 11)

Father Hartke taught at Catholic University for many years and served as chair of the University's drama department. (Id. ¶ 9)  In this capacity, Father Hartke came to know Mercedes McCambridge, an Oscar-winning actress. (Id. ¶ 10)  In gratitude for Father Hartke's "counse[l]ing and support," McCambridge gave him – in or about March 1973 – a blue pinafore dress with a white blouse, which had been worn by Judy Garland when she appeared as Dorothy in The Wizard of Oz film (the "Judy Garland Dress"). (Id. ¶¶ 8, 10; see Shepherd Decl., Ex. F (Dkt. No. 21-22))

When Father Hartke became a priest of the Dominican order on August 14, 1933, he took a vow of poverty, renounced all material goods, and declared that "all goods which may in anyway accrue to me individually belong to the [Dominican] Order. . . ." (Allen Aff. (Dkt. No. 21-13) at 3)  After taking his priestly vows, Father Hartke was assigned to the College of the Immaculate Conception, a division of the Dominican Fathers of the Province of St. Joseph. (Id. at 1 ¶ 3)

Father Hartke died intestate in the District of Columbia on February 21, 1986. (SAC (Dkt. No. 69-1) ¶ 6)  At the time of his death, Father Hartke remained a member of the Dominican Fathers of the Province of St. Joseph. (See Allen Aff. (Dkt. No. 21-13) at 1 ¶¶ 3, 5)

In July 1986, the College of the Immaculate Conception – allegedly "the largest creditor of [Father Hartke's] estate" – petitioned the Superior Court of the District of Columbia, Probate Division, to administer the estate. (See Shepherd Decl., Ex. D (Pet. for Probate) (Dkt. No. 21-15) at 1; SAC (Dkt. No. 69-1) ¶ 6)  The College of the Immaculate Conception's

3

treasurer, Father Joseph P. Allen, petitioned the Probate Court to be appointed as personal representative of the Estate. (Allen Aff. (Dkt. No. 21-13) at 1 ¶ 1) In his application, Father Allen states that Father Hartke had no will or tangible property; that he had "agreed [in his priestly vows] to transfer any future property he might receive to the Dominican Order"; and that he "owned no other assets other than the right to publish[] his name, having delivered all he came into possession of to The College of the Immaculate Conception." (Id. at 1 ¶¶ 2-5) Father Allen further states that "[s]ince the only property subject to administration is the very property which the College [of the Immaculate Conception] claims[,] there is no reason to appoint one of the decedent's heirs [as] Personal Representative." (Id. at 2 ¶ 7)

A copy of Father Allen's petition was mailed to fourteen members of Father Hartke's family, including "Mrs. Barbara Hartke, 1450 N. Astor, Chicago, Illinois 60610," who was misidentified as the "wife of [Father Hartke's] deceased nephew."[5] (Pet. for Probate (Dkt. No. 21-15) at 5) On October 28, 1986, the Probate Court appointed Father Allen as the personal representative of the Estate. (See Shepherd Decl., Ex. C (Inventory) (Dkt. No. 21-14) at 1) On November 14, 1986, Father Allen affirmed that he had mailed a copy of the notice of his appointment to fifteen "heirs and legatees," as required under D.C. Code §§ 20-704(a) and (b). (Id. at 2) On January 21, 1987, Father Allen filed an inventory of the Estate that listed the only item as "[t]he right to publicize the decedent's name." (Id. at 3; see also SAC (Dkt. No. 69-1) ¶ 6)

---

[5] In a "certification" submitted in support of her motion for a preliminary injunction, Plaintiff Hartke states that she has "no recollection of receiving any documentation by mail or otherwise pertaining to the probate of [her] uncle's estate." (Hartke Certification (Dkt. No. 24-1) at ¶ 12) She further states that – while the address listed for her in Father Allen's petition is correct – her apartment number was omitted from the address. (Id.)

4

The probate court proceedings were closed. (Tso Decl., Ex. D (Dkt. No. 21-5); SAC (Dkt. No. 69-1) ¶ 6)

According to Plaintiff, after Father Hartke's death in 1986, the Judy Garland Dress was lost "for decades." (SAC (Dkt. No. 69-1) ¶ 9) In 2021 the dress was discovered "in a storage location on the Catholic University campus." (Id.)

In late March 2022, the University entered into a consignment agreement with Defendant Bonhams, an auction house. (Pernes Decl. (Dkt. No. 19) ¶ 3) Bonhams advertised the Judy Garland Dress for auction on May 24, 2022. (SAC (Dkt. No. 69-1) ¶ 7; see Tso Decl., Ex. H (Dkt. No. 21-9))

On June 13, 2022, Plaintiff applied to the Probate Court to reopen the Estate and succeed Father Allen as personal representative. (SAC (Dkt. No. 69-1) ¶ 16) The Probate Court did not act on Plaintiff's petition, because it had not been properly filed. (Repczynski Decl., Exs. C, D (Dkt. Nos. 72-7, 72-8))[6] On October 24, 2023, Plaintiff "refiled a petition to reopen the Estate and appoint [herself as] personal representative." (SAC (Dkt. No. 69-1) ¶ 17) That application "remains pending in the [Probate C]ourt." (Id.) On December 18, 2023, Plaintiff "applied . . . for an Order to Show Cause . . . to be named as temporary [s]pecial [a]dministrator of the [E]state." (Id. ¶ 18) That application also "remains pending" in Probate Court. (Id.)

---

[6] Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of the case summary for the probate proceedings in In re: Hartke, Gilbert V. (Case No. 1986-ADM-1663). See Yien-Koo King v. Wang, No. 14 Civ. 7694 (JFK), 2018 WL 1478044, at *4 n.1 (S.D.N.Y. Mar. 26, 2018) ("The Court may take judicial notice of public records in related court proceedings in ruling on a motion to dismiss.").

## II.    PROCEDURAL HISTORY

### A.    The Amended Complaint and Defendants' Motion to Dismiss

On May 3, 2022, Plaintiff Hartke filed this action – in her individual capacity and on behalf of the Estate – claiming that the University had converted the Judy Garland Dress, and that the University and Bonhams had falsely advertised the provenance of the dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Cmplt. (Dkt. No. 1)) The Complaint also seeks a declaration that the Judy Garland Dress is the property of the Estate. (Id. ¶¶ 17-23)

On May 6, 2022, Plaintiff moved for a temporary restraining order and preliminary injunction barring Bonhams from auctioning the Judy Garland Dress at an auction scheduled for May 24, 2022. (Dkt. No. 6) This Court issued a preliminary injunction order on May 23, 2022. (See May 23, 2022 Order (Dkt. No. 26))

The Amended Complaint was filed on June 21, 2022, includes the same causes of action originally pled, and adds a cause of action for "breach of duty to exercise reasonable care." (Am. Cmplt. (Dkt. No. 39) ¶¶ 18-37)

On September 20, 2022, Defendants moved to dismiss the Amended Complaint, arguing that (1) Plaintiff lacks standing to sue either in her own name or on behalf of the Estate; and (2) in any event, the Amended Complaint fails to state a claim. See Dismissal Order, 2023 WL 8551889, at *4 (citing Mot. to Dismiss (Dkt. No. 52)).

On December 11, 2023, this Court granted Defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). The Court concluded that Plaintiff lacked standing to pursue her claims, whether on her own behalf or on behalf of the Estate. Id. at *1, *9.

As to Plaintiff's standing to assert claims on her own behalf, the Court noted that "the Amended Complaint repeatedly asserts that the Judy Garland Dress belongs to [Plaintiff's]

6

uncle's estate." Id. at *5 (citing Am. Cmplt. (Dkt. No. 36) ¶¶ 6, 8, 12, 22, 23). Given these factual allegations, Plaintiff had "not pled facts demonstrating that she is a 'real party in interest' under Fed. R. Civ. P. 17(a)." Id. (quoting Fed. R. Civ. P. 17(a)).

As to Plaintiff's standing to sue on behalf of the Estate, this Court explained that New York law – "'the law of the state where [this C]ourt is located'" – governed the determination of Plaintiff's "capacity to sue on behalf of the estate." Id. at *6 (quoting Fed. R. Civ. P. 17(b)(3)). "New York law is clear that – absent 'extraordinary circumstances' – '[o]nly a duly appointed personal representative may bring suit on behalf of a decedent.'" Id. (quoting Garmon v. Cnty. of Rockland, No. 10 Civ. 7724 (ALC) (GWG), 2013 WL 541380, at *3 (S.D.N.Y. Feb. 11, 2013)). Because (1) Plaintiff had not alleged that she had been "appointed as executor, administrator, or in some other capacity as the personal representative of the Estate," id. at *6; and (2) "there are no 'extraordinary circumstances' here that authorize Plaintiff to bring a claim on behalf of the Estate under New York law," id. at *7, this Court concluded that Plaintiff Hartke lacked standing to assert a claim on behalf of the Estate. Id. at *9.

Noting that the Amended Complaint stated that "'[P]laintiff [had] applied in the Superior Court of the District of Columbia, Probate Division, to reopen the Estate and to succeed [Father] Allen as personal representative,'" id. at *6 (quoting Am. Cmplt. (Dkt. No. 39) ¶ 17), but that the Amended Complaint did not disclose whether the Probate Court had addressed her application, id. at *3, *6, this Court granted Plaintiff leave to move to amend to establish her eligibility to represent the Estate. This Court also directed Plaintiff to show cause by December 20, 2023, why this Court's May 23, 2022 preliminary injunction order should not be vacated, given that she lacked standing. Id. at *9.

7

B.     **The Proposed Second Amended Complaint**

On January 2, 2024, Plaintiff moved for leave to file a Second Amended Complaint. (Mot. to Amend (Dkt. No. 69) The proposed SAC is attached as an exhibit to the motion. (SAC (Dkt. No. 69-1))

All claims in the SAC are asserted on behalf of the Estate; Plaintiff Hartke does not assert claims on her own behalf. (See id. at 2) The SAC pleads the same causes of action, but adds a new cause of action for replevin. (Id. ¶¶ 28-32) The SAC includes the following new factual allegations:

(1) on June 6, 2022, Plaintiff Hartke "retained counsel in the District of Columbia" to "formally appl[y]" to "reopen the Estate" and appoint her "as [p]ersonal representative" of the Estate in the Superior Court of the District of Columbia, Probate Division (id. ¶ 16);

(2) "shortly []after" June 13, 2022, Plaintiff Hartke was "advised" by counsel that the Probate Court "could not retrieve the original file" in the 1986 proceeding from its electronic records, would need to "obtain" a "hard copy . . . from [its] physical archives," and "had a backlog of requests because of the pandemic" (id.);

(3) on October 16, 2023, Plaintiff Hartke was informed by counsel that docket entries in the original probate proceeding were "scanned and uploaded" to the Probate Court's "electronic system" (id.);

(4) on October 24, 2023, Plaintiff Hartke "refiled a petition to reopen the Estate and appoint [herself as] personal representative" (id. ¶ 17)

(5) Plaintiff Hartke's application "remains pending" (id.);

(6) on December 1, 2023, the Probate Court "ordered [P]laintiff to file a list of interested parties" and to obtain a written "waiver[] of bond" from each interested party (id.); and

(7) on December 18, 2023, Plaintiff Hartke filed an order to show cause in Probate Court, seeking to be "appoint[ed] as [s]pecial [a]dministrator of the estate." (Id. ¶ 18; see also Pltf. Br., Ex. 6 (Dkt. No. 70-6)) The application "remains pending." (SAC (Dkt. No. 69-1) ¶ 18)

## DISCUSSION

I. **LEGAL STANDARDS**

Under Fed. R. Civ. P. 15, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under [Rule 15(a),] leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile.") (quoting Foman, 371 U.S. at 182). A motion for "leave to amend would be futile [if] the proposed amended complaint did not cure the original complaint's deficiencies . . . [as to] subject matter jurisdiction" under Rule 12(b)(1). Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [her] grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its

9

exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)).

The prudential limits are codified in Rule 17(a) of the Federal Rules of Civil Procedure, which requires that "[a]n action . . . be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). In other words, "only 'a person who possesses the right to enforce [a] claim and who has a significant interest in the litigation' can bring the claim." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l., 790 F.3d 411, 420-21 (2d Cir. 2015) (quoting Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 48 n.1 (2d Cir. 2005)). "'The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles.'" Id. at 421 (quoting Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102 (5th Cir. 1989)).

In considering a motion to dismiss under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint," but a court is "not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.

"The party opposing a motion to amend . . . bears the burden of establishing that an amendment would be futile." Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

10

II.     **ANALYSIS**

The SAC does not contain new factual allegations that cure the standing defects identified in the Dismissal Order.[7]

As explained in the Dismissal Order, in order to bring suit on behalf of a decedent under New York law, a plaintiff must (1) be a "'a duly appointed personal representative,'" Dismissal Order, 2023 WL 8551889, at *6 (quoting Garmon, 2013 WL 541380, at *3) (collecting cases); or (2) plead "extraordinary circumstances" that "authorize [her] to bring a claim on behalf of the estate" in a capacity other than as personal representative. Id. at *7 (citing Aetna Life Ins. Co. v. Frank, 592 F. Supp. 3d 317, 322 (S.D.N.Y. 2022)). "'Extraordinary circumstances' are implicated 'where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate,'" id. (quoting Aetna, 592 F. Supp. 3d at 322)); or in "'cases of collusion, of insolvency of the personal representatives, of refusal by them to sue, whether collusively or bona fide . . . or of the existence of other special circumstances such as the fraudulent transfer of the trust property by the personal representatives themselves.'" Id. (quoting Lefkowitz, 2003 WL 22480049, at *6).

The SAC does not plead that the Probate Court appointed Plaintiff Hartke to serve as the executor, administrator, or personal representative of Father Hartke's estate, or that she received any letters of administration. See Garmon, 2013 WL 541380, at *3 ("Only a duly appointed personal representative may bring suit on behalf of a decedent.") (citing Palladino v. Metro. Life Ins. Co., 188 A.D. 2d 708, 709 (3d Dept. 1992)); N.Y. Est. Powers & Trusts § 1-2.13 (defining a "personal representative" of an estate as "a person who has received letters to

---

[7] As noted above, in the SAC Plaintiff Hartke abandons her previous efforts to assert claims on behalf of herself. The SAC only asserts claims "on behalf of the Estate of Gilbert V. Hartke." (SAC (Dkt. No. 69-1) at 2, 8-10)

11

administer the estate of a decedent"). And while the SAC alleges that Plaintiff Hartke applied (1) "to reopen the Estate and be named [as p]ersonal [r]epresentative" on June 13, 2022, and October 24, 2023; and (2) "for an [o]rder to [s]how [c]ause appointing [her] as [s]pecial [a]dministrator" of Father Hartke's estate on December 18, 2023, Plaintiff's applications "remain[] pending in the [Probate C]ourt." (SAC (Dkt. No. ¶¶ 16-18) In sum, Plaintiff Hartke is still not a "duly appointed personal representative" of Father Hartke's estate. Garmon, 2013 WL 541380, at *3 ("Since Plaintiff is not the administrator on his son's estate, he lacks standing to sue on his son's behalf.").

Nor does the SAC plead facts demonstrating "extraordinary circumstances" – such as fraud or intentional misrepresentation – that would assist Plaintiff in bringing claims on behalf of her uncle's estate even though she is not the Estate's personal representative. See Lewis v. DiMaggio, 115 A.D. 3d 1042, 1044 (3d Dept. 2014) (applying "extraordinary circumstances" standard in action brought by beneficiaries of an estate, noting that in cases "involving fraud or undue influence, the complaint must set forth in detail the circumstances constituting the wrong"). While the SAC, like the Amended Complaint, complains that Father Allen stated in his inventory that Father Hartke did not own property other than "[t]he right to publicize [his] name" (SAC (Dkt. 69-1) ¶ 6; Am. Cmplt. (Dkt. No. 39) ¶ 6), neither pleading alleges facts suggesting that Father Allen knew that Father Hartke owned physical property. And the record shows that Father Allen was aware that – in becoming a Dominican priest on August 14, 1933 – Father Hartke had taken a vow of poverty, renounced all material goods, and declared that "all goods which may in anyway accrue to me individually belong to the [Dominican] Order. . . ." (Allen Aff. (Dkt. No. 21-13) at 3) In short, there is no basis for this Court to find that Father Allen committed fraud or made a misrepresentation to the Probate Court

in stating that Father Hartke had no physical property. As the Court explained in the Dismissal Order, Plaintiff's conclusory claim of fraud and intentional misrepresentation (see Am. Cmplt. (Dkt. No. 39) ¶ 6; see also SAC (Dkt. No. 69-1) ¶ 6) is not sufficient to allege "extraordinary circumstances." Dismissal Order, 2023 WL 8551889, at *8-9; see Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .").[8]

Because Plaintiff has not (1) demonstrated that she has been appointed as personal representative of the Estate; or (2) shown that there are "extraordinary circumstances" that would justify hearing her claims even absent such an appointment, she lacks standing to pursue the claims set forth in the SAC.

Plaintiff argues, however, that even if she is not the real party in interest – a fact that she acknowledges is a "standing defect" – she "has demonstrated due diligence in seeking appointment as personal representative," and this Court should allow her "reasonable time to . . . substitut[e]" herself as a personal representative. (Pltf. Br. (Dkt. No. 70) at 2, 5) Plaintiff asks that she be "grant[ed] leave to file the [SAC]," and that this case be "permitted to proceed." (Id. at 5)

---

[8] In moving for leave to amend, Plaintiff Hartke states that she has "never raised the argument that [extraordinary] circumstances existed." (Pltf. Br. (Dkt. No. 70) at 6; see also id. (referring to the Dismissal Order's discussion of extraordinary circumstances as "essentially prop[ping] up and knock[ing] down a straw man argument never made by [P]laintiff"); id. at 7 ("[P]laintiff has not sought to argue that Allen's misrepresentations . . . constitute[] extraordinary circumstances.")) But in the Amended Complaint, Plaintiff asserts that "the statement of [Father] Allen that there was no personalty other than [the right to publicize the decedent's name] was false, fraudulent amounting to perjury, or at the very least, reckless disregard for the truth." (Am. Cmplt. (Dkt. No. 39) ¶ 6) And in the SAC, Plaintiff repeats her claim that Father Allen made "a misrepresentation to the Court . . . either intentionally[] or negligently and with reckless disregard for the truth." (SAC (Dkt. No. 69-1) ¶ 6) The clear import of these allegations is that "extraordinary circumstances" justify hearing Hartke's claims, even though she has not been appointed a personal representative of the Estate.

13

In support of her argument, Plaintiff cites Yien-Koo King v. Wang, No. 14 Civ. 7694 (JFK), 2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018). (See Pltf. Br. (Dkt. No. 70) at 2-4) In King, two children of the decedent sought to represent their father's estate. King, 2018 WL 1478044, at *1. In September 2016, the decedent's daughter sued on behalf of her father's estate, even though she had not been appointed as personal representative. In June 2017, Judge Keenan dismissed plaintiff's claims without prejudice, because she "had not been named executrix or administratrix of [her father's] estate, as required to bring suit on behalf of the decedent's estate under New York law." Id. at *4. In February 2018, the daughter moved for reconsideration, noting that the Surrogate's Court had "issued preliminary letters testamentary to [her]." Id. Because the daughter's "appointment [constituted] new evidence not available . . . at the time of [d]efendants' motion to dismiss," and because "preliminary letters testamentary 'confer[red] upon [the daughter] . . . all the powers and authority . . . of an administrator,'" Judge Keenan found that "as preliminary executrix, [the daughter] now has standing to sue on behalf of [her father's e]state." Id. at *5 (quoting N.Y. Surr. Ct. Proc. Act § 1412(3)(a)).

King merely confirms that only an estate's executor or administrator has standing to litigate on behalf of an estate. It was only after the daughter was issued preliminary letters testamentary that Judge Keenan found that she had cured the standing deficiency. See Wang, 2018 WL 1478044, at *5-6; see also Purcell ex rel. Est. of Tyree v. City of New York, No. 18-CV-3979 (PKC) (RLM), 2020 WL 2559796, at *6 (E.D.N.Y. May 19, 2020) (finding that plaintiff had standing to assert claims on behalf of estate after "the Surrogate's Court, State of New York, Richmond County, provided [plaintiff] with Limited Letters of Administration"; "[n]ow that [p]laintiff has demonstrated she is . . . the real party in interest . . . the [c]ourt is permitting [p]laintiff to substitute herself as the Administrator of the Estate for the Estate, as

permitted under FRCP 17"); Estwick v. U.S. Air Shuttle, 950 F. Supp. 493, 499 (E.D.N.Y. 1996) (finding that plaintiff had "cured" her "standing deficiency" after her "subsequent appointment as administratrix"); Brohan on Behalf of Brohan v. Volkswagen Manufacturing Corp. of America, 97 F.R.D. 46, 48-49 (E.D.N.Y. 1983) (granting leave to amend "to allow plaintiff to sue as executrix" after she was "appointed [as] executrix of her husband's will").

Here, by contrast, Plaintiff Hartke has not been appointed as personal representative of the Estate, and therefore she lacks standing to assert claims on behalf of the Estate.  See Harrison v. Harlem Hosp., No. 5 Civ. 8271 (WHP), 2007 WL 2822231, at *2 (S.D.N.Y. Sept. 28, 2007), aff'd, 364 F. App'x 686 (2d Cir. 2010) (summary order) (dismissing complaint "[b]ecause [plaintiff] did not receive letters of administration until June 22, 2005, [and] no [p]laintiff had the legal capacity to bring a . . . claim on [the estate's] behalf until that date"); Weinstein v. Med. Ctr. Hosp. of Vermont, Inc., 358 F. Supp. 297, 299 (D. Vt. 1972) (dismissing case because "[plaintiff] is without capacity to maintain the present action until she has authority to proceed by way of ancillary letters of administration").

To the extent that Plaintiff Hartke argues that she has not been allowed "a reasonable time" to cure the standing deficiency here (Pltf. Br. (Dkt. No. 70) at 2), this Court rejects that argument.  This case has been pending since May 3, 2022 (see Cmplt. (Dkt. No. 1)), and Defendants notified Plaintiff of the standing deficiency in their June 17, 2022 opposition to her request to amend the Complaint.  (Dkt. No. 36 at 2 ("Plaintiff, as an individual, has no 'case or controversy' with the Defendants because she is not a representative of the Estate . . . and has no interest in the [Judy Garland] Dress.")

Although Plaintiff has made various applications to the D.C. Probate Court, she has not been appointed as personal representative of the Estate, and it is not clear that Plaintiff

will ever be so designated. Because Plaintiff lacks standing, this Court lacks subject matter jurisdiction to consider her claims. See Lunney v. United States, 319 F.3d 550, 557 (2d Cir. 2003) (where there is no real party in interest, a "case must be dismissed because subject matter jurisdiction is lacking").

## CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file a Second Amended Complaint is denied, and this action is dismissed without prejudice.[9] Because Plaintiff has not shown cause why this Court's May 23, 2022 order granting her a preliminary injunction should remain in place, that Order (Dkt. No. 26) is hereby vacated. The Clerk of Court is directed to terminate the motion (Dkt. No. 69) and to close this case.

Dated: New York, New York
       January 23, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[9] "Where[, as here,] a case is dismissed for lack of Article III standing," "that disposition cannot be entered with prejudice, and instead [the case] must be dismissed without prejudice." Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 121 (2d Cir. 2017) (emphasis in original); see also Hernandez v. Conriv Realty Associates, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").